951 P.2d 866

STATE of Arizona, Appellee,

v.

Dominic Joseph ALTIERI, Jr., aka
James Lee Miller, aka Jerry
R. Eskin, Appellant.

No. CR–96–0668–PR.

Supreme Court of Arizona,
En Banc.

Dec. 23, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Phoenix, Christopher E. Avery, Assistant Attorney General, Tucson, for Appellee.

Polis & Hartshorne, P.C. by Bertram Polis, Tucson, for Appellant.

## OPINION

MOELLER, Justice.

### FACTS AND PROCEDURAL HISTORY

¶ 1 Defendant Dominic Joseph Altieri ("defendant") was tried *in absentia* and

found guilty by a jury of transportation of marijuana for sale and possession of marijuana for sale, both class two felonies. He was sentenced to concurrent, presumptive five-year prison terms. The facts leading to his convictions follow.

¶2 On October 2, 1994, the Arizona Department of Public Safety received an anonymous telephone call stating that a man named Dominic, approximately 42 years old, was driving a four-door, gray 1991 Buick Century, westbound on I–10 near Marana Road in Tucson. The caller stated that the car had Idaho license plate number 2/C 96113 and that the driver had in his possession $1,000 in cash and 150 pounds of marijuana.

¶3 Shortly after the tip, a Marana police officer to whom it had been relayed followed a car matching the caller's description which defendant was driving westbound on I–10. The officer followed the car for eight miles. She observed no traffic violations before she turned on her lights and pulled defendant's car over. She approached the car with her gun drawn, but held at her side, and told defendant to keep his hands on the steering wheel. She asked defendant if his name was Dominic, and he responded "yes." He supplied the officer with an expired Arizona driver's license. After backup officers arrived, defendant told the officers that he did not own the vehicle and that they could search it. Officers found more than 150 pounds of marijuana in the car. Defendant had more than $400 in cash.

¶4 Defendant moved to suppress evidence seized from him and the car, relying on federal constitutional principles.[1] Following a suppression hearing, the trial court concluded that the officers had reasonable suspicion to stop defendant's vehicle, and that the stop and questioning were appropriate. The court also held that defendant had voluntarily consented to the opening of the trunk, and that when he claimed the packages were not his, the disclaimer amounted to an abandonment of the packages. Accord-

ingly, defendant's motion to suppress was denied and, after trial, defendant was convicted.

¶5 The court of appeals affirmed defendant's convictions, holding that the anonymous tip supplied reasonable suspicion for the stop. The appellate court also rejected defendant's additional claim that he had been arrested without probable cause when the officer stopped him, ordered him to keep his hands on the steering wheel, and approached him with her gun drawn.

¶6 We reverse defendant's convictions because we hold the anonymous tip was insufficient to supply reasonable suspicion for the officer to stop defendant. Thus, the trial court should have granted the motion to suppress. Because of our disposition on this point, it is unnecessary to determine whether the unauthorized stop rose to the level of an illegal arrest.

## DISCUSSION

¶7 We review a trial court's factual findings concerning a motion to suppress under an abuse of discretion standard. *State v. Peters*, 189 Ariz. 216, 218, 941 P.2d 228, 230 (1997). However, the trial court's ultimate legal determination concerning whether police had a reasonable suspicion of criminal activity which "justified conducting an investigatory stop is a mixed question of law and fact which we review *de novo.*" *State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996) (citing *Ornelas v. United States*, 517 U.S. 690, 700, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 919 (1986)).

¶8 A law enforcement officer may stop a vehicle when there are objective facts available raising a suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *State v. Richcreek*, 187 Ariz. 501, 503, 930 P.2d 1304, 1306 (1997), citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

1. In the motion to suppress filed in the trial court, defendant also cited to Arizona's constitutional provision protecting an individual's right to privacy, Ariz. Const. art. II § 8. No separate argument based on the state constitution was made in the trial court and defendant has not referred to that provision in his petition for review. Accordingly, we review this case solely under the federal constitution.

¶ 9 Although an anonymous tip may, in some circumstances, be sufficient to support a stop, the tip must show sufficiently detailed circumstances to indicate that the informant came by his information in a reliable way. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *State v. White*, 122 Ariz. 42, 43, 592 P.2d 1308, 1309 (App.1979). If the tip itself fails to provide sufficient underlying circumstances demonstrating the reliability of the information, the reliability may be supplied by independent observations of the police corroborating the information in the tip. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *White*, 122 Ariz. at 43, 592 P.2d at 1310. Nevertheless, the tip must contain "a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301, 310 (1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 245, 103 S.Ct. 2317, 2335–36, 76 L.Ed.2d 527, 552 (1983)).

¶ 10 The tip in this case provided the following information: a white male named Dominic, approximately 42 years old, was driving alone in a 1991 gray Buick Century, four-door vehicle bearing Idaho license plate number 2/C 96113, westbound on I-10 from Ina Road, and the vehicle allegedly contained 150 pounds of marijuana and $1,000 in cash. The court of appeals found the Supreme Court *Draper* case controlling. While *Draper* is instructive, we do not believe it controls here. The tip at issue in *Draper* was not anonymous. There, the informant was a "special employee" of the Bureau of Narcotics and the officers knew his identity and had always found his information to be "accurate and reliable." 358 U.S. at 313, 79 S.Ct. at 333, 3 L.Ed.2d at 331. Moreover, the tip provided details of future events, not merely details which could be observed at the time of the tip. In *Draper*, the tipster informed the police that Draper would be arriving in Denver by train from Chicago in the morning on either the next day or the following day, and also described the clothing which Draper would be wearing. In this case, officers did not know the caller's identity, veracity or basis of knowledge. Moreover, the tip merely provided current information which could have been obtained by anyone who observed the defendant and knew or heard his first name. Nothing confirmed the bare allegation that defendant was carrying contraband. Such corroboration of the tip as was observed by the officers was unrelated to any criminal activity.

¶ 11 In *Gates*, 462 U.S. at 225–27, 103 S.Ct. at 2325–26, 76 L.Ed.2d at 540–41, police received an anonymous letter which alleged that Mr. and Mrs. Gates, who lived in Illinois, were engaged in selling drugs and that on May 3, Mrs. Gates would drive her car to Florida to be loaded with drugs and, a few days later, Mr. Gates would fly to Florida, pick up the car, and return to Illinois. Police conducted surveillance and, on May 5, observed Mr. Gates fly to Florida, pick up a car there with Illinois plates registered in his name, and drive back to Illinois. The *Gates* court noted that the anonymous tip contained "a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Id.* at 245, 103 S.Ct. at 2335–36, 76 L.Ed.2d at 552. Thus, the tip was corroborated sufficiently to "reduce the chances of a reckless or prevaricating tale." *Id.* at 244–45, 103 S.Ct. at 2335, 76 L.Ed.2d at 552.

¶ 12 In *Alabama v. White* the Supreme Court discussed the holding in *Gates* and held that, even for an investigatory detention, it is important that a tip contain details beyond those "easily obtained" facts and conditions existing at the time of the tip. 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310. In *Alabama v. White*, police had received an anonymous tip that at a certain time, White would leave a particular place in a particular vehicle and take cocaine to a particular motel. The police went to the described apartment, observed White leave at the described time and drive towards the motel. They stopped White on the street where the motel was located, just short of the motel, whereupon she consented to a search of her vehicle and marijuana was discovered. After White was arrested, cocaine was discovered inside her purse. The court

held that the anonymous tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. However, the court stressed the importance of the nature of the corroborated facts: "[w]hat was important was the caller's ability to predict the respondent's *future behavior*, because it demonstrated inside information— a special familiarity with respondent's affairs." *Id.* The court found no indicia of reliability as to the corroboration of information which was current and easily available to the public, such as the fact that the officers found a car precisely matching the caller's description in front of the described building. With respect to that information, the court noted that "anyone could have 'predicted' that fact because it was a condition presumably existing at the time of the call." *Id.* The court held that the tip and the ensuing corroboration were sufficiently reliable to support the investigatory detention because the police were able to corroborate the defendant's future behavior:

> The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. *Id.*

We do not believe that *Alabama v. White* covers this case. The tip here contained no private information about defendant, nor was there any prediction of future events that were corroborated by the police. Thus, unlike the situations in *Gates, Draper* and *White,* here there was no indication that the information came from a person privy to defendant's affairs, as opposed to any member of the general public who observed the direction the defendant was traveling. Thus, it was not reasonable to believe that the tip was reliable.

¶ 13   Similarly, in *State v. Bullington,* 165 Ariz. 11, 795 P.2d 1294 (App.1990), officers received a 911 tip that a narcotics transaction was to occur later that day and that four people from Ohio were in Tucson attempting to purchase marijuana. The court held that where the tip only proved details as to existing facts and contained no details as to the suspects' future actions, there was no sufficient indicia of reliability to support the stop of the suspects' vehicle. *Bullington,* 165 Ariz. at 14, 795 P.2d at 1297.

## CONCLUSION

¶ 14   The information provided to the police by the anonymous tip contained only neutral, non-predictive information about the defendant and his activities and was itself insufficient to provide reasonable suspicion for the stop. The corroboration did not sufficiently substantiate the reliability of the tip to support the investigative stop. Thus, the police officers lacked reasonable suspicion to support the vehicle stop and the trial court should have granted defendant's motion to suppress. Because of this conclusion, it is unnecessary to address defendant's additional contention that he was arrested without probable cause when the police officer stopped him, ordered him to keep his hands on the wheel, and approached him with gun drawn. The memorandum decision of the court of appeals is vacated, defendant's convictions are reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

ZLAKET, C.J., and JONES, V.C.J., and FELDMAN and MARTONE, JJ., concur.