### State of Vermont v. Lawrence V. Lamb

[720 A.2d 1101]

No. 96-252

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed July 31, 1998

*James P. Mongeon*, Rutland County State's Attorney, and *Lamar Enzor*, Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Morse, J.** Defendant Lawrence Lamb appeals his conviction of operating a vehicle while under the influence of intoxicating liquor. 23 V.S.A. § 1201(a)(2). He contends that the trial court erred by: (1) denying his motion to suppress evidence derived from an investigatory stop of his vehicle based upon information supplied by an unnamed informant; and (2) admitting the results of a Datamaster infrared breath test. We affirm.

The essential question before the Court is whether, considered in their *totality*, the circumstances justified a brief investigatory stop based in part upon an unnamed informant's tip that defendant was driving while intoxicated. We conclude that the detention was amply justified because (a) the investigating officer had corroborating information that could only have come from a knowledgeable insider, (b) the officer knew that defendant had been arrested previously for DUI, and (c) the offense of DUI presented an imminent risk of injury to the suspect or the public.

## I.

Viewed in the light most favorable to the State, *State v. McGee*, 163 Vt. 162, 164-65, 655 A.2d 729, 732 (1995), the record discloses the following facts. At approximately 8:20 p.m. on a snowy evening in February 1994, a Vermont State Police trooper received a radio dispatch that a woman had called stating that defendant was very upset and intoxicated and was leaving a residence on Vaughn Road in Poultney. The dispatcher related that defendant was driving a large red car with a vinyl top. The trooper was familiar with Vaughn Road and with defendant, having processed him for DUI the previous year. When the trooper arrived at Vaughn Road approximately twelve minutes later, he saw a vehicle that matched the description provided by the dispatcher. The trooper recognized the driver as defendant. He thereupon activated his blue lights and stopped the vehicle. Prior to the stop, he had not observed defendant driving erratically. Upon approaching the vehicle, the trooper observed that defendant showed signs of intoxication. After failing several field sobriety tests, defendant was arrested for DUI and transported to the State Police barracks. A Datamaster infrared breath test administered at the barracks showed that defendant had a blood-alcohol level of .159 percent.

Prior to trial, defendant moved to suppress all evidence obtained as a result of the stop on the ground that the police lacked a reasonable suspicion to believe defendant was engaged in criminal activity. See *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). The trial court denied the motion, finding that the trooper "had a reasonable and articulable suspicion, based on the information provided by the [informant] and his own prior knowledge of the defendant, that the defendant was operating under the influence and was, therefore, justified in stopping defendant's vehicle to investigate further." *

At trial, defendant conceded that he was operating a vehicle while intoxicated, but disputed whether he was on a "highway" within the meaning of the statute. See 23 V.S.A. § 1201(a)(2) ("A person shall not operate . . . any vehicle on a highway . . . when the person is under the influence of intoxicating liquor."). A jury returned a verdict of guilty. This appeal followed.

## II.

■ Police officers may make an investigatory stop based upon a reasonable suspicion that the suspect is engaged in criminal activity. See *Terry*, 392 U.S. at 21-22. The reasonable suspicion standard is less demanding than probable cause for an arrest or a search warrant. As the United States Supreme Court explained in *Alabama v. White*, 496 U.S. 325, 329-30 (1990), reasonable suspicion under the Fourth Amendment requires some minimal level of objective justification for making the stop. Reasonable suspicion, moreover, need not be based upon the officer's personal observations. "An informant's tip, if it carries enough indicia of reliability, may justify a forcible stop." *State v. Kettlewell*, 149 Vt. 331, 335, 544 A.2d 591, 594 (1987); see also *Adams v. Williams*, 407 U.S. 143, 147 (1972) (Supreme Court "reject[ed] . . . argument that reasonable cause for a stop . . . can only be based on the officer's personal observation").

The reliability of the information provided by an informant must be assessed in the light of the totality of the circumstances. As explained in *White*, "reasonable suspicion can arise from information that is less reliable than that required to show probable cause," so long as the information, considered in the "totality of the circumstances," is

---

* In denying a renewed motion to suppress at trial, the trial court concluded that the stop was justified on a different basis, to wit, the caller's report of a domestic disturbance. Contrary to a suggestion by the dissent, however, the record reveals no conflict between the findings of the two courts concerning the material facts underlying the stop.

sufficiently corroborated to warrant the intrusion. 496 U.S. at 330. This is an assessment "dependent upon both the content of information possessed by [the] police and its degree of reliability." *Id.*

*White* is a case particularly on point. There, as here, law enforcement officers stopped a vehicle based upon an anonymous tip that the defendant was engaged in criminal activity. In *White* the alleged offense was possession of cocaine. The informant stated that the defendant would be leaving a particular apartment at a particular time in a particular vehicle, and would drive to a particular location. The officers observed the defendant leave the apartment within the predicted timeframe, enter a vehicle matching the informant's description, and proceed in the direction of the predicted location. The high court noted that although the informant was anonymous, the information he supplied appeared to be reasonably reliable "because it demonstrated inside information . . . . The general public would have had no way of knowing that [defendant] would shortly leave the building, get in the described car, and drive the [predicted] route." *Id.* at 332. Thus, there was reason to believe the caller was sufficiently "well informed . . . to justify the stop." *Id.* Under these circumstances, the Court concluded, the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion of criminal activity and justify an investigative stop. See *id.* at 331.

The facts here are similar to those in *White*. One difference is that the officer did not actually observe defendant leave the residence and enter the described car, since the informant's call was contemporaneous with defendant's departure. Nevertheless, just as in *White*, the informant accurately predicted that defendant would be driving in a particular location, in a particular car, and at a particular time. Most important, as in *White* the caller unmistakably supplied the police with "inside information." *Id.* at 332. The call was received in the middle of the evening. The informant stated that defendant was upset and intoxicated and was driving away from a residence on Vaughn Road, a dirt road located in a rural area that led to several residences, dead-ended in one direction, and intersected with Route 140 in the other. Approximately twelve minutes later, the officer intercepted a car on Vaughn Road; the officer noted that the car matched the vehicle described by the informant and was driven by defendant, whom the officer recognized from a previous DUI offense.

These facts demonstrate that it would have been virtually impossible for all but a handful of people to accurately predict that defendant would be in his car at the particular time and place

described. The general public would have had no way of knowing that defendant was leaving a relatively isolated rural residence, located on a dirt road, at 8:30 on a winter evening. As the high court observed in *White*, "[b]ecause only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.* Thus, when significant portions of information not privy to the general public were verified by the officer here, "there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.* Standing alone, these circumstances were at least as strong as those found sufficient to justify the stop in *White*.

Indeed, considered in their totality, the facts here were *more* compelling than those in *White* in at least three respects. First, while the informant was "anonymous" in the sense that she did not specifically disclose her name, the general identity of the caller as a personal friend or acquaintance of defendant was plainly inferrable from her statement that defendant had argued with a woman, was upset and intoxicated, and was leaving a residence on Vaughn Road. The police, in effect, were responding to a specific report of a domestic dispute at a particular location. In terms of assessing the caller's reliability, this is far more particularized information than could be expected from a total stranger. See, e.g., *State v. Lambert*, 146 Vt. 142, 144, 499 A.2d 761, 763 (1985) (upholding stop based upon wife's hearsay report that defendant might be driving while intoxicated).

Although the dissent suggests that there were "discrepancies" between the facts adduced at the suppression hearing and those presented at trial, the only "discrepancy" noted is an ambiguity as to whether the telephone call was made by defendant's girlfriend or the owner of the house on Vaughn Road. There was no dispute that one of the two women made the call from the house, that both were present in the house when the call was made, that defendant was intoxicated, and that defendant was about to leave in his vehicle. Thus, the caller was plainly one of the two women in question, and clearly demonstrated inside information about the facts.

Further, there is no indication in *White* that the defendant was known to the officers. Here, in contrast, the officer was familiar with defendant from having processed him for a prior DUI offense. In assessing the reliability of the informant's information, the officer was entitled to rely on his personal knowledge of defendant's prior

criminal activity. See *United States v. Harris*, 403 U.S. 573, 583 (1971) (officer may rely on personal knowledge of suspect's reputation).

Finally, the circumstances here created an element of urgency that was not present in *White*. The reported offense in *White*, possession of an ounce of cocaine, posed no imminent threat of harm to the suspect or to the general public requiring an immediate police response. The alleged offense here, driving while intoxicated, presented a substantial and immediate risk of death or serious injury to both the driver and anyone unlucky enough to get in his way. As one court has observed: "A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible." *State v. Tucker*, 878 P.2d 855, 861 (Kan. Ct. App. 1994). The potential risk of harm to the defendant and the public is widely acknowledged to be a critical factor in assessing the reasonableness of an investigatory stop.

As noted earlier, the existence of "[r]easonable suspicion, like probable cause, is dependent upon both the *content* of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered . . . ." *White*, 496 U.S. at 330 (emphasis added). Thus, it is generally recognized that "[t]he content of the tip . . . and, in particular, the *level of danger* that the tip reveals" is a "crucial factor" in "determining the reasonableness of a police response and the reliability required of an informant's tip." *State v. Pully*, 863 S.W.2d 29, 32-33 (Tenn. 1993) (emphasis added). Stated differently, "the consequences of a police officer's *failure* to investigate a tip must be considered when assessing the reasonableness of a stop." *Id.* at 34 (emphasis added); see also *Tucker*, 878 P.2d at 861 (Fourth Amendment "balancing test must consider the risk to the public of not making an immediate stop against the right of an individual to be free from such stops").

This principle is reflected in numerous decisions upholding the use of brief investigatory stops based upon anonymous tips of people carrying deadly weapons. In *State v. Hasenbank*, 425 A.2d 1330 (Me. 1981), for example, the Maine Supreme Court upheld a stop pursuant to an anonymous report of a particularly described man carrying a gun, holding that when the police receive anonymous but "immediately verifiable information that a specifically described individual possesses a concealed weapon," they are justified in stopping that individual "for the protection of the public and their own safety." *Id.* at 1333-34.

*United States v. Bold*, 19 F.3d 99 (2d Cir. 1994), is also instructive. Although the Second Circuit Court of Appeals acknowledged that the information provided by the anonymous informant in that case lacked the same degree of reliability as in *White*, 496 U.S. 325, it nevertheless upheld an investigatory stop, observing that

> in *White*, the anonymous tip related to a drug deal; the tip here related to a man with a gun. The distinction is significant and important: "Th[e] element of imminent danger distinguishes a gun tip from one involving possession of drugs. If there is any doubt about the reliability of an anonymous tip in the latter case, the police can limit their response to surveillance or engage in 'controlled buys.' Where guns are involved, however, there is the risk that an attempt to 'wait out' the suspect might have fatal consequences."

*Bold*, 19 F.3d at 104 (quoting *United States v. Clipper*, 973 F.2d 944, 949 (D.C. Cir. 1992); see also *United States v. McClinnhan*, 660 F.2d 500 (D.C. Cir. 1981) (upholding stop based upon anonymous tip of man carrying a sawed-off shotgun); *People v. Smithers*, 415 N.E.2d 327, 332 (Ill. 1980) ("The fact that the officers had information that the complaint they were investigating involved a man with a gun casts a heavy weight in favor of the reasonableness of the search. . . . We should evaluate the officers' actions in light of one's reaction had they failed to act.").

The principle of these deadly-weapons cases — that the gravity of the risk of harm must be considered in evaluating the reasonableness of the investigatory stop — applies with equal force to intoxicated driving. In *State v. Melanson*, 665 A.2d 338 (N.H. 1995), for example, the New Hampshire Supreme Court confronted a case strikingly similar to the case at bar. An officer received a dispatch based upon an anonymous tip that the driver of a particular car traveling in a particular direction might be intoxicated. The officer located and stopped the vehicle, although he did not observe any suspicious or erratic behavior prior to activating his lights. Relying on *White*, 496 U.S. at 330, the New Hampshire Supreme Court upheld the stop, finding that the anonymous informant, who had accurately described the vehicle's make and location, was sufficiently reliable. In this regard, the court further noted that:

> the officer faced the potential of a dangerous public safety hazard. Unlike *[State v.] Kennison*, [590 A.2d 1099 (N.H.

1991)], where the police could have safely observed the defendant in order to obtain information regarding her illegal [possession of drugs], here failure quickly to stop the defendant's vehicle in order to confirm or dispel the officer's suspicions could have exposed the public as well as the defendant herself to the danger of an impaired driver. The officer's ability to observe incriminating behavior, therefore, was limited by the exigency of the situation.

*Melanson*, 665 A.2d at 340.

Another recent decision closely on point is *Tucker*, 878 P.2d 855. There, as here, a patrol officer received a dispatch that an anonymous informant had called to report that a driver in a particular pickup traveling in a particular direction appeared to be intoxicated. The officer located and stopped the described vehicle, although he did not observe any erratic driving. In assessing the reasonableness of the stop, the Kansas court observed: "We view the question of whether an anonymous tip can provide a sufficient basis to stop a vehicle in the light of the danger a drunken driver poses to the public." *Id.* at 861. The court noted that the caller's information concerning the make and location of the car was corroborated by the officer. Moreover, the court observed, "[t]he risk of ignoring the tip was that of death and destruction on the highways." *Id.* at 862. In these circumstances, the court concluded that "the high degree of danger to the public" tipped the balance in favor of the stop. *Id.* at 864.

> To require time-consuming verification of the tip in all aspects might well result in the death of an innocent user of our highways. We do not believe that the Fourth Amendment requires the public to accept such risk, and we decline to impose that risk upon the public.

*Id.* See also *State v. Markus*, 478 N.W.2d 405, 408 (Iowa Ct. App. 1991) (officers receiving anonymous tip of intoxicated driver did not have to observe erratic behavior "to stop the defendant and investigate this exigent circumstance"); *People v. Rance*, 644 N.Y.S.2d 447, 447 (App. Div. 1996) (police stop of reportedly intoxicated driver "may be based upon information from an anonymous source where, as here, it relates to 'matters gravely affecting personal or public safety'") (quoting *People v. Taggart*, 229 N.E.2d 581, 586 (N.Y. 1967)); *Kaysville City v. Mulcahy*, 943 P.2d 231, 236 (Utah Ct. App. 1997) (court upheld stop of intoxicated driver based upon anonymous tip, noting "'that the greater and more immediate the risk to the public revealed by the tip,

the less importance we will accord to the process of corroboration or verification of the tip.'") (quoting *Tucker*, 878 P.2d at 862).

■ Considered in the light of these authorities, the circumstances here were more than sufficient to justify the stop. These circumstances included not only the trooper's rapid verification of the information supplied by the informant, but also the virtual impossibility that such information could have been supplied by anyone but a knowledgeable insider, the officer's personal knowledge of defendant's prior DUI arrest, and the potential danger — to himself as well as to others — posed by an intoxicated driver. Thus, we hold that the trial court correctly denied defendant's motion to suppress.

Our holding does not signify that virtually any stop for DUI will be upheld for any reason. Every case will continue to be scrutinized individually for the reliability of the information received and the reasonableness of the stop in the circumstances presented. See, e.g., *State v. Burgess*, 163 Vt. 259, 262, 657 A.2d 202, 204 (1995) (affirming suppression of evidence that defendant was operating a vehicle while intoxicated where officer lacked reasonable basis to detain vehicle located in lawful pull-off area with engine running and lights on); *State v. Welch*, 162 Vt. 635, 636, 650 A.2d 516, 518 (1994) (mem.) (reversing conviction for DUI where information supplied by unnamed informant failed to establish reasonable suspicion of wrongdoing). Nor does today's decision signal an extension of the so-called "community caretaking" doctrine, under which we have upheld certain stops to "'assist those in distress.'" *State v. Marcello*, 157 Vt. 657, 658, 599 A.2d 357, 358 (1991) (mem.) (quoting *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989)). Although, as noted, public safety should be considered in evaluating the reasonableness of an investigatory detention for DUI, ultimately the test is whether there was an articulable suspicion of criminal activity.

### III.

Defendant also claims the trial court erred in admitting the results of a Datamaster infrared breath test which showed defendant's blood alcohol content. He asserts that the State failed to establish the requisite foundational evidence for the admission of the test result under *State v. Rolfe*, 166 Vt. 1, 12, 686 A.2d 949, 957 (1996).

Defendant was charged with operating a vehicle on a highway while under the influence of intoxicating liquor. See 23 V.S.A. § 1201(a)(2). The sole disputed issue at trial was whether defendant was on a

"highway" within the meaning of the statute. Defendant expressly stipulated at trial, and did not contest, "that he was under the influence of alcohol as defined by statute" and "that he was under the influence while operating the motor vehicle in this case." Accordingly, in closing argument the prosecutor informed the jury without objection that the first two elements of the offense "concerning intoxication and operation are not contested by the parties." Defense counsel further conceded during closing that defendant was "admittedly under the influence of alcohol."

In the light of these circumstances, we are unable to perceive any prejudice to defendant from the Datamaster results, even assuming, without deciding, that the State failed to establish an adequate foundation for their admission.

*Affirmed.*

**Dooley, J.,** dissenting. If the informant in this case had identified herself, I would enthusiastically join the majority opinion. Although anonymous accusations are not per se unreliable, the disclosure of the accuser's identity shows a willingness to bear the consequences of the accusation. See *Brown v. United States*, 590 A.2d 1008, 1015 (D.C. 1991); 13 V.S.A. § 1754 (knowingly making a false report to a law enforcement officer "to implicate another" is a crime). Many persons who provide information anonymously are public-spirited and want to prevent criminal conduct, but are unwilling to get involved in the process of investigation and conviction. Others may have different motives. We instinctively are concerned about giving a central place to anonymous accusations in law enforcement because we cannot know the motive of the accuser or judge the accuser's reliability.

In this case, the anonymous nature of the "tip" was wholly unnecessary, assuming the tip was, in fact, anonymous.* The caller reported a domestic dispute and gave her location. I doubt that she thought she could remain anonymous; the simple request that she give her name would probably have been honored and would have ended this dispute.

---

* The findings of the motions judge indicate that she believed the caller gave her name, but the prosecution failed to offer any evidence of this. The State had the burden of production at the suppression hearing and later at the trial. See *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985); 5 W. LaFave, Search & Seizure § 11.2(b), at 38 (3d ed 1996). In the absence of evidence on the point, we must assume that the tip was anonymous. I can't help believe, however, that this case is before us because the State never obtained evidence from the dispatcher who could have provided more information on the tip.

Unfortunately, the majority has used this case to stretch beyond recognition the limits necessarily imposed to ensure the reliability of anonymous tips and reduced any incentive for law enforcement to obtain the name of tipsters. As a result, this case proves that the danger predicted by Justice Stevens' dissent in *Alabama v. White*, 496 U.S. 325, 333 (1990), is real: "Anybody with enough knowledge about a given person to make her the target of a prank, or to harbor a grudge against her, will certainly be able to formulate a tip about her" like the one present here. I do not believe that the curtailment of the personal liberty of innocent Vermonters that will result from today's decision is justified by the small increase in DUI enforcement it might produce. Accordingly, I dissent.

I agree that the critical precedent is *White*, 496 U.S. 325. In describing *White*, however, the majority has left out the central parts of its holding. First, the Supreme Court described the facts in *White* as a "close case." *Id.* at 332. Second, the Court particularly relied on the fact that the tip specified that the defendant would drive a specified route to "Dobey's Motel," a drive that involved several turns, and the officers stopped the vehicle just short of the motel. Thus, the Court reasoned:

> We think it also important that . . . "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not predicted." . . . The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information — a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. . . . When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller

was honest but also that he was well informed, at least well enough to justify the stop.

*Id.* In summary, *White* was a close case where the Court was able to find reasonable suspicion because the anonymous tip predicted future behavior, that is, a four-mile journey to Dobey's Motel.

The majority glosses over this aspect of *White*, suggesting here that the tip predicted defendant's itinerary and gave "significant portions of information not privy to the general public." This is a gross exaggeration of the contents of the tip in this case. The tip stated only that defendant would get into his automobile and leave through the end of a short dead-end street that was open. This was not a prediction because, as the majority states, "the informant's call was contemporaneous with defendant's departure." All the officer corroborated was that defendant was driving out the end of the dead-end street. Indeed, when the officer arrived twelve minutes later, defendant had gone only a few feet and claimed to still be in the driveway.

The majority argues, however, the "prediction" takes on added significance because defendant was in a rural area. Unless we are prepared to say that fewer people know of their neighbors' (or enemies') affairs in a rural area, an assumption that is probably directly contrary to reality, this is a red herring. The fact is that there is no prediction here, and what facts were disclosed in the tip were available to others. See, e.g., *State v. Altieri*, 951 P.2d 866, 868 (Ariz. 1997) (anonymous tip that stated that vehicle contained drugs, gave license plate number, and added that it could be found going in a certain direction on an identified highway did not provide reasonable suspicion even when police observed vehicle going by on highway); *VonLinsowe v. State*, 445 S.E.2d 371, 372-73 (Ga. Ct. App. 1994) (same); *Johnson v. State*, 659 N.E.2d 116, 119 (Ind. 1995) (tip that named individual would be found transporting drugs in described automobile "in a particular area of town" was insufficient to create reasonable suspicion even though officer had arrested individual for drug possession in past and described vehicle was found where tipster predicted it would be); *Commonwealth v. Lyons*, 564 N.E.2d 390, 393 (Mass. 1990) (tip that included description of vehicle, even when confirmed, is not sufficiently predictive to provide reasonable suspicion); *State v. Miller*, 510 N.W.2d 638, 644-45 (N.D. 1994) (tips that give only description and location of vehicle provide only easily obtained facts available to general public; corroboration of this type of information does not increase reliability of tip).

Nor am I persuaded that the fact that the officer in this case had "processed" defendant for DUI in the past justified the stop. I agree that in the totality of the circumstances an officer may rely on knowledge of a suspect's prior criminal activity. See *United States v. Harris*, 403 U.S. 573, 583 (1971). I don't believe, however, that this factor can create reasonable suspicion where it does not otherwise exist. See 4 W. LaFave, Search & Seizure § 9.4(f), at 192 (3d ed. 1996) (those with prior arrests and convictions must be allowed to live without risk of constant harassment based on their record); cf. *Parish v. State*, 939 S.W.2d 201, 204 (Tex. Ct. App. 1997) (where anonymous tip of drug selling is inadequately corroborated, fact that defendant has a criminal record is not sufficient to allow issuance of search warrant).

Despite the purported adherence to *White*, the real holding of this case is that the corroboration deemed necessary in *White* is unnecessary here because defendant was accused of driving while intoxicated. Contrary to the majority's argument, there is no statement in *White* that the nature of the crime is balanced against the reliability of the anonymous tip to determine whether it creates reasonable suspicion. Although *White* was a drug possession case, most of the anonymous tip cases have involved drug sales. If the principle the majority espouses is that uncorroborated anonymous tips are acceptable if they include an allegation of on-going criminal conduct that will injure third parties, these cases would qualify for the exception. The exception the majority espouses is neither narrow nor containable.

In adopting this broad exception, the majority has uncritically accepted decisions that do adopt a narrow and reasonable exception that is not applicable here. In *United States v. Bold*, 19 F.3d 99, 104 (2d Cir. 1994), the court adopted its exception because reasonable law enforcement tools to confirm the criminal conduct claimed were too dangerous to the law enforcement personnel involved and others. See *Commonwealth v. Hawkins*, 692 A.2d 1068, 1071 (Pa. 1997) (noting that carrying licensed firearm is lawful in Pennsylvania, court rejected argument that anonymous tip was reliable because it claimed that defendant possessed gun in course of criminal conduct). The DUI cases generally involve situations where the anonymous caller reports having seen dangerous driving, consistent with the alcohol impairment of the operator, and describes the vehicle, its location, and its direction of travel. As the Supreme Court of New Hampshire emphasized in *State v. Melanson*, 665 A.2d 338, 340 (N.H. 1995), this is a report of publicly-displayed criminal conduct, much harder to

fabricate, and suggesting that the officer could not safely observe the defendant without threatening his own safety and that of the public.

In this case, no one saw defendant operate a vehicle unsafely; the claim was generally that defendant was intoxicated, not that he had been driving dangerously; and the officer arrived on the scene before defendant had traveled more than a few feet. Thus, unlike *Melanson*, the information was private, not public. Unlike *Bold*, there is no specific reason to believe that the officer could not have safely followed defendant and stopped him when he observed erratic operation, a routine law enforcement action that has been reported scores of times in our cases. Given the BAC level in this case, I have no doubt that defendant's driving would have demonstrated impairment and would have established that he was guilty of the crime, rather than the subject of a false accusation.

It is this latter concern that makes the majority's broad rule unacceptable to me. If the anonymous informant calls and says defendant is carrying drugs, the police may not stop the vehicle. If the informant calls and says that defendant is carrying drugs, while driving drunk, the police may stop the vehicle. The dishonest informant will learn to tailor the accusation to bring about the desired result. Exactly the consequences feared by Justice Stevens are made easier by the majority's relaxed standard of reliability.

Finally, I find this case an inappropriate vehicle to fashion the broad rule on which the majority relies. As discussed *infra*, the theory used by the majority is not that used by the trial court, and there are serious consequences of the shift in theory. The trial court found the stop valid because the caller reported a domestic disturbance. The majority has not attempted to affirm the decision on the trial court's theory. I do not think it can be affirmed on that theory because the tip did not claim that the domestic dispute involved criminal conduct and it did report that defendant had left the scene. See *State v. Caron*, 155 Vt. 492, 499, 586 A.2d 1127, 1131 (1990) (facts and inferences from them must "warrant a reasonable belief that a suspect is engaging in criminal activity").

There were serious grounds to question the reliability of the anonymous informant in this case. She called during a domestic dispute with defendant, suggesting the possibility of an improper motive. During the pretrial hearing, the officer testified that he determined at the scene that Leni Briggs was the complainant. Leni Briggs testified at trial, and said she believed that Lila Dickinson made the call to the police. Ms. Briggs and Ms. Dickinson were

friends and lived in the same house, apparently in separate apartments. When Ms. Dickinson testified at trial, she was never asked whether she called the police, but testified that she assumed defendant was waiting for his brother to drive him home.

Although the caller said defendant was leaving as she called, he was stopped within a few feet of the house twelve minutes later. In fact, the defense at trial was that defendant was stopped within the private driveway of the house he was visiting, and virtually all of the testimony went to that issue. There were inaccuracies in the caller's description of the car.

The majority glosses over the discrepancies as unimportant because one of the women called the police and both had access to the information. In fact, the "ambiguity" in the testimony, as the majority calls it, points out why reliance on anonymous tips is dangerous. Leni Briggs denied making the call, and Lila Dickinson's testimony was inconsistent with the contents of the call because she did not believe defendant was driving away. The testimony does not support the majority's conclusion that one of the two women made the call. Because no one takes responsibility for the contents of the call, it is impossible to test its veracity.

Defendant raised the legality of the stop in a pretrial motion, as he was required to do. The motions judge denied the motion based on the theory that the caller reported that defendant was intoxicated and that the officer had once processed defendant for DUI. In reaching this conclusion, the motions judge stated "the court will take the testimony of the officer as true in weighing the evidence at hand."

Defendant renewed his motion at trial, as he is required to do under *State v. Senecal*, 145 Vt. 554, 558, 497 A.2d 349, 351 (1985). The trial court refused to uphold the stop on the theory adopted by the motions judge and the majority here, holding that the complaint of a domestic dispute justified the stop. Although there was additional evidence bearing on the motion, the trial judge made no findings. The State has urged affirmance here on the theory that defendant was reported to have been involved in a domestic disturbance.

We considered a situation similar to this case in *State v. Bruno*, 157 Vt. 6, 595 A.2d 272 (1991), where the motions judge had found a DUI stop to be constitutionally lawful based on one theory, with supporting findings, and the trial judge found it lawful based on a different theory, supported by new findings inconsistent with those of the motions judge. We held that the action of the trial judge controlled and found this judge's rationale to be valid. See *id.* at 9-11, 595 A.2d

at 274-75. Justice Morse dissented, in part, because he believed there were no real findings supporting the trial judge's decision. See *id.* at 13, 595 A.2d at 276.

While I disagreed with Justice Morse that there were inadequate trial judge findings in *Bruno*, I do not disagree that adequate findings are required. The trial judge decided to reconsider the pretrial motion decision, and there were discrepancies between the motion evidence and the trial evidence. The State's theory was that Leni Briggs made the anonymous complaint, and that she and defendant had had the argument. The motions judge found that the caller reported that she and defendant had had an argument. Leni Briggs testified that she did not make the call. The evidence suggests that the content of the call may have been different from that found by the motions judge, and the basis of the caller's knowledge was weaker. Because the trial judge adopted a different theory to determine the motion, there are no findings based on the full evidence before the court. At a minimum, we should remand for findings. It may be that the court will disbelieve Leni Briggs, or it will affirm the content of the tip as found by the motions judge, despite the fact that the caller was not the person in a domestic dispute with defendant. That determination should be made by the trial court in the first instance.

With the current emphasis on increasing DUI enforcement, an emphasis with which I agree, it is tempting to relax the standards police must follow to make vehicle stops based on suspicion that the operator is impaired. Where the information behind a stop comes from an anonymous tip and there is no significant, independent observation that the tip is reliable or that the person to be stopped is operating illegally, I would resist this temptation. We are greatly increasing the likelihood that dishonest tips will be effective with little improvement in DUI enforcement.

I would reverse. I am authorized to state that Justice Johnson joins in this dissent.