2012 VT 81

**State of Vermont v. Paul Edmonds**

**State of Vermont v. Francis Cobb**

[58 A.3d 961]

Nos. 11-426 & 11-427

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed October 12, 2012

---

*Gregory Nagurney*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Daniel Stevens* of *Griffin, Marciscovetere & Wilkes P.C.*, White River Junction, for Defendants-Appellants.

¶ 1. **Burgess, J.** In this consolidated appeal, defendants Paul Edmonds and Francis Cobb appeal from their conditional pleas to driving with a suspended license, claiming that the Windsor Criminal Division erred in denying their motions to suppress evidence. Defendants argue that they were subject to investigative stops unsupported by reasonable suspicion of criminal activity in violation of the Fourth Amendment to the United States Constitution. They alternatively argue that Chapter I, Article 11 of the Vermont Constitution affords greater protection against such detentions than does the Fourth Amendment, and that, even if lawful under the Fourth Amendment, the investigative stops in each case violated Article 11. The trial court, treating the reasonable suspicion standard as the same under the Fourth Amendment and Article 11, held that defendants' detentions were supported by reasonable suspicion that they were driving with suspended drivers licenses. We affirm.

¶ 2. The facts of each case, as found by the trial court, may be summarized as follows. In *State v. Edmonds*, a Vermont State Trooper, on patrol on Route 5 in Hartford, ran a random registration check on the license plate of a passing car. The check revealed that the owner of the car was Paul Edmonds, whose license was suspended in Vermont. Based on his observation that a male was driving the car, the trooper inferred that defendant Edmonds was the driver. After stopping the car, the trooper learned that defendant Edmonds was in fact the driver and issued a citation for driving with a suspended license (DLS).

¶ 3. In *State v. Cobb*, another trooper, on patrol in the Springfield shopping plaza, ran a random registration check on the license plate of a parked car. The check showed the car's owner to be defendant Francis Cobb, whose license was suspended. Parked about 200 yards from the car, the trooper delayed action until the car began moving from its parking spot. The trooper then turned on his head lights — but not his blue lights or siren — and began driving toward the car. When the driver, in response, pulled into a nearby parking spot, the trooper drove behind the car, which did not prevent it from moving forward. The trooper then approached the driver's side of the car and determined that the driver was in fact defendant Cobb, and that his license was under criminal suspension. The trooper cited defendant Cobb for DLS.

¶ 4. In both cases, defendants moved to suppress all evidence obtained following the respective investigative stops.[1] Defendants' basic argument was that the troopers in each case had no reasonable suspicion of wrongdoing to justify a stop as required by the Fourth Amendment and Article 11, because knowing who owns a car does not, without further identification, establish who the driver is.[2] The trial court denied the motions to suppress, reasoning that "in the absence of evidence to the contrary, it is

---

[1] In *State v. Cobb*, the State opposed the motion to suppress on the ground that, under the facts of that case, there was no investigative stop requiring the trooper to have reasonable suspicion of wrongdoing. In ruling on the motion to suppress, however, the court assumed, without deciding, that a stop occurred. Whether a stop did occur in *State v. Cobb* is therefore not at issue in this appeal.

[2] We note that defendant Edmonds sought suppression based on both the Fourth Amendment and Article 11, while defendant Cobb's motion to suppress rested exclusively on Article 11. The court's decision covered both cases, however, and did not distinguish between reasonable suspicion under the Fourth Amendment and under Article 11.

reasonable as a matter of common sense for police officers to infer that the registered owner [of a car] is the one most likely to be driving the car at that moment." The court specified that "[t]he corollary is that reasonable suspicion dissipates if the officer becomes aware that the registered owner is not the current operator, such as when the registered owner is a male and the officer sees that the driver is a female." Defendants entered guilty pleas conditioned on this appeal of the court's suppression rulings.

¶ 5. The lone issue is whether the investigative stops made in each case were supported by reasonable suspicion. Ordinarily, we review the trial court's factual findings for clear error and its legal conclusions de novo. *State v. Arrington*, 2010 VT 87, ¶ 7, 188 Vt. 460, 8 A.3d 483. There is no dispute over the underlying facts here, so our focus is entirely on the court's legal analysis.

¶ 6. Defendants, reiterating their grounds for suppression below, contend that there can be no reasonable suspicion that an operator is DLS just on the knowledge that an owner of a motor vehicle is under suspension. Positing that a "significant number of households in Vermont share a vehicle," defendants argue that knowing the car's owner cannot by itself establish particularized suspicion as to the driver without some further identifying information pointing to the owner as the actual driver. Defendants also urge that concern over unrestricted investigative stops of innocent drivers demands a holding that Article 11 offers greater protection against such stops than does the Fourth Amendment, so even if lawful under the Federal Constitution, the stops in these cases violated Article 11. We disagree, and hold that under both the Fourth Amendment and Article 11, these investigatory stops were supported by reasonable suspicion that the driver was operating with a suspended license. Accordingly, we affirm.

¶ 7. Under the Fourth Amendment and Article 11, equally, "[p]olice officers may conduct a warrantless investigatory stop when specific and articulable facts, *taken together with rational inferences from those facts*, warrant a reasonable belief that a suspect is engaging in criminal activity." *State v. Caron*, 155 Vt. 492, 499, 586 A.2d 1127, 1131 (1990) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)) (emphasis added). Reasonable suspicion thus requires, not reasonable certainty, but only a reasonable belief "that criminal activity *may* be afoot." *Terry*, 392 U.S. at 30 (emphasis added). Certainty of wrongdoing is not required. Thus,

the test "is not whether the conduct . . . was consistent with innocent behavior, but rather whether the officers were reasonable, *under all the circumstances*, in believing that [the person was] involved or about to become involved in criminal activity." *United States v. Holland*, 510 F.2d 453, 455 (9th Cir. 1975) (quotation omitted); see also *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *State v. Simoneau*, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280 (stating that level of suspicion required to make a stop is less than that required to prove wrongdoing by a preponderance).[3] Reasonable suspicion may not rest, however, on a police officer's mere hunch of criminal activity. *Simoneau*, 2003 VT 83, ¶ 14.

■ ¶ 8. Applying these general principles to the stops in these cases, we conclude that each was supported by reasonable suspicion. As the trial court explained, reasonable suspicion lay in the troopers' knowledge that the owner of each car was under license suspension, and the reasonable inference that the driver of a car could be its owner.

■ ¶ 9. The court was also correct in its assessment that the additional information confirming driver identification advocated by defendants as a precondition to being stopped was, essentially, a standard of probable cause beyond the less demanding "reasonable and articulable" suspicion necessary for an investigative stop. See *State v. Pitts*, 2009 VT 51, ¶ 7, 186 Vt. 71, 978 A.2d 14 (explaining that a stop on suspicion is for the purpose of briefly investigating "the circumstances that justified it"); see also *State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010) (noting that investigative stops are intended to resolve uncertainty as to probable cause). Moreover, in neither case was there any assertion that the troopers were aware of information, such as the operator's gender, ethnicity, or age, inconsistent with the identity of the known registered owner. See *State v. Tozier*, 2006 ME 105, ¶ 10, 905 A.2d 836 (holding that, absent contradictory facts, reasonable suspicion

---

[3] Defendants assert a policy argument in support of their claim that Article 11 affords greater protection against investigatory stops than does the Fourth Amendment. Despite any legitimate concerns raised by this argument, we have applied the same reasonable suspicion standard under the Fourth Amendment as under Article 11, and see no need to depart from that standard today. See *Caron*, 155 Vt. at 499, 586 A.2d at 1131 (applying *Terry* to claim that investigative stop violated Vermont and Federal Constitution). Defendants neither actually proffer nor justify a different test, but only dispute the application of the reasonable suspicion standard.

of driving with a suspended license existed where car owner's license was suspended, even though it was possible that someone of same gender as owner could be driving car); *State v. Richter*, 765 A.2d 687, 689 (N.H. 2000) (holding that reasonable suspicion of driving with a suspended license existed based solely on officer's reasonable inference that owner of car was driver of car). In short, the troopers had no obvious reason to believe that these drivers were not the registered owners under license suspension.[4]

¶ 10. Nor is defendants' proffered authority to the contrary persuasive. One case, *State v. Cerino*, which held that no reasonable suspicion of wrongdoing existed based on an Idaho registration check reporting the owner as unlicensed by *that* state, is inapposite because the owners here were reported as having a suspended Vermont license. 117 P.3d 876, 879 (Idaho Ct. App. 2005). Defendants' reliance on *Worley v. Commonwealth*, an unreported decision from an intermediate appeals court, is also misplaced. No. 1913-94-2, 1996 WL 31949 (Va. Ct. App. Jan. 30, 1996). The court in *Worley* opined, contrary to all other jurisdictions on the same point, that there was no reasonable suspicion of wrongdoing where police knew only that the car's owner had a suspended license, and "did not determine whether the driver was the owner" before making the stop. *Id.* at *1. The court looked only to its own precedent affirming that reasonable and articulable suspicion existed when an officer, alerted to the registered owner of a vehicle being under suspension, further confirmed that the driver's physical description matched the owner's "gender and approximate height, weight, and hair color." *Id.* (quotation omitted). The standard of *Worley*, however, calls for a level of investigative certainty that is practically indistinguishable, if at all, from probable cause, rather than the lesser level of reasonable suspicion constitutionally required for an investigative stop.

■ ¶ 11. As explained above, reasonable suspicion does not require confirmation of criminal activity before making a stop. Specific and articulable facts, along with rational inferences war-

---

[4] As the State notes, this is an issue of first impression in Vermont, but all other state supreme courts that have considered it have held that reasonable suspicion exists under facts similar to those here. See *Armfield v. State*, 918 N.E.2d 316, 321-22 (Ind. 2009); *Vance*, 790 N.W.2d at 781; *Commonwealth v. Deramo*, 762 N.E.2d 815, 818 (Mass. 2002); *Tozier*, 2006 ME 105, ¶ 10; *State v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996); *State v. Halvorson*, 2000 MT 56, ¶ 16, 997 P.2d 751; *Richter*, 765 A.2d at 689.

ranting a reasonable belief in *potential* wrongdoing, are sufficient. *Caron*, 155 Vt. at 499, 586 A.2d at 1131. The troopers in these cases were not operating on a mere hunch, but on the known fact that the owner of each car had a suspended license and their inference that owners could be reasonably expected to drive their vehicles. Absent any fact to suggest the opposite, that expectation was entirely reasonable.

*Affirmed.*