*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NOS. 2014-332 & 2014-357

JUNE TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Chittenden Unit, |
| | } | Criminal Division |
| | } | |
| Matthew G. Fay | } | DOCKET NOS. 68-2-14 Cncs & |
| | | 714-3-14 Cncr |

Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Defendant appeals an order of the superior court, criminal division, denying his motion to suppress, in which he sought dismissal of a criminal charge of driving while intoxicated (DWI) and a judgment in his favor in the civil-suspension proceeding. We affirm.

For the most part, the facts are undisputed. Late in the evening of February 15, 2014, an officer of the Essex Police Department received a "be on the lookout" report originating from the South Burlington Police Department. The report related that a witness had observed an unidentified male getting behind the wheel of a vehicle with license plates FTA953 at the Guild Steakhouse in South Burlington after having "consumed quite a bit of alcohol" and "acting like he was intoxicated." After identifying the person to whom the vehicle was registered and driving by that person's address, the officer parked near the "Five Corners" intersection in the Village of Essex Junction, through which the vehicle was likely to pass if the registered owner was heading home from the restaurant. Shortly thereafter, the officer observed the suspect vehicle pass through the intersection at the expected time, given the distance from the restaurant.

The officer stopped the vehicle after following it for a short while without observing any signs of erratic operation. When the officer approached the vehicle and engaged defendant in a conversation, he smelled a strong odor of alcohol and noticed that the operator turned his head away when speaking to him. In response to the officer's query, defendant stated that he had had one drink that evening. His female passenger reminded him that he had had two drinks, but he insisted that he had had only one.

At the officer's request, defendant exited the vehicle to perform field dexterity tests. His performance of the three tests was mixed. The first test resulted in two of six possible cues, which is considered short of the decision point for intoxication. The second and third tests, however, resulted in cues that were just at and beyond the decision point, respectively. The officer then obtained a preliminary breath test (PBT), which revealed a blood-alcohol content

(BAC) of .134. At that point, the officer arrested defendant and took him to the police station, where he submitted to an evidentiary breath test that revealed a BAC of .146.

Defendant was charged with DWI and received notice of the civil suspension of his driver's license. He challenged the civil suspension and pled not guilty to the criminal DWI charge. In July 2014, the trial court held a hearing on defendant's motion to suppress the results of the stop and to dismiss the criminal case and enter judgment in his favor in the civil-suspension proceeding. The court denied the motion and upheld the civil suspension of defendant's license, concluding that the arresting officer had a reasonable basis to stop defendant, ask him to exit the vehicle to perform field sobriety tests, and administer a PBT at the scene.

Following the court's decision, defendant entered a conditional plea of no contest and filed notices of appeal in the civil and criminal proceedings. He argues on appeal that the trial court erred by failing to grant his motion to suppress based on an improper initial stop and the officer's failure to advise him of his rights with respect to the PBT. "[W]e review the trial court's factual findings for clear error and its legal conclusions de novo." State v. Edmonds, 2012 VT 81, ¶ 5, 192 Vt. 400; see also State v. Mara, 2009 VT 96A, ¶ 6, 186 Vt. 389 ("It is a question of law whether the facts as found met the proper standard to justify a particular police action.").

We first consider defendant's challenge to the initial stop. As a preliminary matter, we conclude that defendant has failed to preserve or adequately brief any argument under Article 11 of the Vermont Constitution. To be sure, in his motion to suppress and dismiss, defendant stated that the stop of his vehicle violated both the Fourth Amendment of the United States Constitution and Article 11. But the entirety of defendant's analysis in that motion as to whether he is entitled to greater protection under Article 11 than under the Fourth Amendment was his single statement that this Court on several occasions has exercised its ability to afford greater protection under Article 11 than that provided under the Fourth Amendment. On appeal, his Article 11 analysis amounts to nothing more than a request that we adopt the reasoning of the dissenters in a recent U.S. Supreme Court case in which the majority upheld a stop based on an anonymous tip. These statements do not satisfy defendant's obligation to demonstrate why Article 11 afforded greater protection than the United States Constitution on this issue, particularly considering that this Court has suggested, at least in a general sense, that the tests used to assess reasonable suspicion to justify a stop are the same under both constitutions. State v. Edmonds, 2012 VT 81, ¶ 7 ("Under the Fourth Amendment and Article 11, equally, police officers may conduct a warrantless investigatory stop when specific and articulable facts, taken together with rational inferences from those facts, warrant a reasonable belief that a suspect is engaging in criminal activity." (quotation and emphasis omitted)). Not surprisingly, the trial court did not engage in any Article 11 analysis. We decline to do so as well under the circumstances. See State v. Towne, 158 Vt. 607, 622 (1992) (declining to address inadequately briefed Article 11 arguments).

Defendant argues that the stop in this case should be suppressed because the information police received was not reliable. In so arguing, he seeks to distinguish the facts of this case from those in which this Court has upheld stops based on anonymous tips. He emphasizes that in this case: (1) the officer had no information concerning the identity of the reporting witness; (2) the "be on the lookout" report contained no indication of erratic driving; (3) the officer stopped defendant eighteen minutes after hearing the report, but he did not know when the witness called

2

the South Burlington police station; and (4) no audio recording of the stop was available because the officer failed to follow police protocol requiring him to make sure that the equipment was operating properly. We conclude, based on the case law reviewed below, that the trial court did not err in denying defendant's motion to suppress.

"Police officers may make an investigatory stop based upon a reasonable suspicion that the suspect is engaged in criminal activity." State v. Lamb, 168 Vt. 194, 196 (1998). This standard is less demanding than the probable cause standard; it requires only "some minimal level of objective justification for making the stop," and is not necessarily dependent on the officer's personal observations. Id.; see Alabama v. White, 496 U.S. 325, 330 (1990) (stating that anonymous tip may serve as basis for vehicle stop because reasonable suspicion is less demanding standard than probable cause "not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause"). A stop may be justified by an informant's tip as long as the tip is sufficiently corroborated to warrant the intrusion based on an assessment of the content of the information and its degree of reliability. Lamb, 168 Vt. at 197. In this case, although the informant apparently gave her name to police, no evidence indicates that the arresting officer was aware at the time of the stop of the witness's identity or even whether the witness had provided her identity to police. Nevertheless, this Court has upheld stops based on similar information after determining that the tip was sufficiently reliable for the arresting officer to have the requisite articulable suspicion of drunk driving.

In Lamb, an officer received a radio dispatch that a woman had called stating that the defendant was "upset and intoxicated" and was leaving a residence at a particular location in a particularly described vehicle. Id. The officer, who was familiar with the location and the defendant, stopped the defendant without observing any signs of erratic driving. We upheld the DWI conviction based on our conclusion that the information received by the officer was sufficiently reliable to support the stop because the information supplied by the caller accurately described defendant's whereabouts and direction of travel, the officer was familiar with defendant after having processed him for DWI the year before, and the alleged offense of DWI "presented a substantial and immediate risk of death or serious injury to both the driver and anyone unlucky enough to get in his way." Id. at 197-99. We stated that "it is generally recognized that the content of the tip and, in particular, the level of danger that the tip reveals is a crucial factor in determining the reasonableness of a police response and the reliability required of an informant's tip." Id. at 199 (quotation and alterations omitted).

We reinforced this holding in State v. Boyea, 171 Vt. 401 (2000), a case with facts more similar to the instant one. In Boyea, an officer received a radio dispatch stating that an informant (who was not named) reported a specifically described vehicle being operated in an erratic manner at a specific location on the interstate. After observing the vehicle traveling in an expected location based on the timing of the informant's call, the officer stopped the vehicle without observing erratic driving. We upheld the stop based solely on the anonymous tip, noting that the informant reported erratic driving, provided a description of the car, and indicated not only the vehicle's current location but also where it was headed, which was corroborated by the officer's interception of the vehicle at a predicted location. Id. at 410; cf. Navarette v. California, 134 S. Ct. 1683, 1688-90 (2014) (concluding that unnamed person's contemporaneous report of being run off road by someone driving particularly described vehicle

was sufficiently reliable for arresting officer to initiate stop based on reasonable suspicion of drunk driving).

We come to the same conclusion here after examining the three critical factors concerning the reliability of a tip: "the nature and specificity of the information conveyed; the extent of corroboration by the officer; and the urgency of effectuating a stop in the circumstances." Boyea, 171 Vt. at 404. Here, the radio dispatch upon which the stop was based indicated that a person reported witnessing a man who had drunk quite a bit of alcohol and was acting intoxicated leave a restaurant and get behind the wheel of a specifically identified vehicle. After identifying defendant as the registered owner of the vehicle in question, the officer waited at an intersection through which defendant would be expected to travel if he was heading home late that evening from the restaurant. The vehicle in fact showed up at the intersection around the expected time given the distance from the restaurant. In short, the information regarding the vehicle was specific, it was corroborated in part by the officer, and it involved an allegation of drunk driving, which posed a danger to the public. In these key respects, the case is similar to Boyea.

Defendant seeks to distinguish Boyea by pointing out that here the tipster did not witness any erratic driving. That is true, but the tipster reported that defendant had drunk quite a bit of alcohol and was acting intoxicated. As the trial court pointed out, people generally have sufficient experience with intoxication and its associated behaviors to lend credibility to a reported observation of intoxicated behavior. See State v. Rifkin, 140 Vt. 472, 476 (1981) ("Where alcohol is involved, we have consistently held that a lay person, on the basis of his personal observations, is competent to give his opinion as to the sobriety of an individual, because it takes no special scientific knowledge or training to recognize intoxication."); People v. Cruz, 399 N.E.2d 515, 517 (N.Y. 1979) ("Intoxication is not an unfamiliar concept. It is intelligible to the average person . . . ."). The crime of which defendant was suspected, and for which he was stopped, was not erratic driving, but rather driving while intoxicated. The police need not wait for erratic driving, or a report of erratic driving, before stopping a person for DWI, as long as the stop is based on a reasonable suspicion of commission of the offense. We conclude that in this case the dispatch report, which was based on the tip provided by a member of the public, was sufficient for the arresting officer to have a reasonable and articulable suspicion that defendant was driving while intoxicated.

Defendant also argues that the arresting officer did not have probable cause to arrest him because his performance of the field sobriety tests did not indicate intoxication and he never consented to the PBT. See State v. Therrien, 2011 VT 120, ¶¶ 10-11, 191 Vt. 24 (stating that because statute requires law enforcement officers to request rather than order driver to submit to PBT, and trial court's unchallenged finding was that officer did not ask defendant to submit to PBT, "the PBT was improperly obtained and the result should not have been considered in the court's determination of whether there was sufficient probable cause to arrest defendant for DUI"). In this case, the arresting officer directly testified that he "asked [defendant] if he would be willing to submit to a PBT" and "[h]e agreed." During cross-examination, however, the officer responded affirmatively when asked if it would "be fair to say that you simply said to him I have this, this is the fourth test, blow hard, something along those lines." The trial court found that the officer "asked" defendant if we would take the PBT, and he "agreed." Although the evidence on this point was equivocal, there is evidence in the record to support the court's finding, making this case distinguishable from Therrien.

4

In any event, even if we were to assume that the officer ordered rather than requested defendant to take the PBT, we would conclude, as we did in <u>Therrien</u>, that the error is harmless because the officer had probable cause to make the arrest without the PBT result. <u>Id</u>. ¶ 12 (stating that officer's observations of defendant and results of field sobriety tests strongly indicated that defendant was impaired and thus supported officer's decision to arrest him on suspicion of DWI, even without considering PBT result). In addition to having information that defendant had drunk quite a bit of alcohol and was acting intoxicated at the restaurant, the officer noticed a strong odor of alcohol emanating from defendant and observed furtive actions on defendant's part to avoid detection. Further, we do not agree with defendant's assessment of his performance of the field sobriety tests. Evidence in the record supports the court's findings that defendant's performance was mixed, with only two cues indicated on the first test, less than the decision point for intoxication, but with sufficient cues on the other two tests to indicate intoxication. All in all, there was sufficient indication of intoxication for the officer to arrest defendant based on probable cause of DWI.

<u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

5