6 P.3d 765

**STATE of Arizona, Appellee,**

v.

**Orlando GOMEZ, Appellant.**

No. 1CA–CR 99–0152.

Court of Appeals of Arizona, Division 1, Department A.

July 13, 2000.

Janet Napolitano, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Katia Mehu, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for Appellant.

### OPINION

FIDEL, Judge.

¶ 1 In assessing whether an anonymous citizen's report of crime in progress provides reasonable suspicion for an investigative stop by the police, should greater reliability be attributed to a traceable 911 call from a private telephone than to an untraceable, entirely anonymous, report of crime? We answer that question affirmatively in this appeal.

### HISTORY

¶ 2 Defendant was convicted of possession of narcotic drugs, dangerous drugs, and drug paraphernalia. He argues on appeal that the trial court erred by denying his motion to suppress the inculpatory fruits of an investigative vehicular stop that emanated from a 911 call.

¶ 3 A Chandler police officer was dispatched to investigate a 911 caller's report that a passenger had been pointing a gun out the window of a pickup and waving it in the air; the caller said that she observed this behavior while stopped behind the truck in the drive-through lane of a fast food restaurant. The caller identified the truck by color, make, license plate number, and direction; the officer, spotting it in the vicinity, initiated an investigative stop. The driver acknowledged that Defendant, a passenger, had been waving a handgun in sport; the driver said he had taken the gun from Defendant and put it away. When a records check revealed an outstanding warrant for Defendant, he was arrested; during the ensuing custodial inventory search, the police found drugs and drug paraphernalia in his sock.

¶ 4 Defendant asserts on 4th Amendment grounds that the police lacked any basis in reasonable suspicion to stop the truck in which he was a passenger. His argument to suppress the drugs and paraphernalia found upon his person hinges entirely upon the validity of the investigative stop.

## STANDING

■ ¶ 5 We first consider the State's argument that Defendant, as a passenger, lacks standing to assert a 4th Amendment search or seizure violation. This argument confuses standing to object to a search of the truck with standing to object to the stop. In *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the leading authority on passenger standing, the passengers did not contest the validity of the stop, and the Supreme Court resolved their search objection by concluding that they had shown no "legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers." *Id.* at 148, 99 S.Ct. 421.

¶ 6 Here, in contrast, Defendant's argument for suppression does not extend to evidence found in common areas of the truck. It extends only to items found upon his person, which were fruits of the challenged underlying stop. Most authorities since *Rakas* that have differentiated the stop question from the search question have concluded that a passenger, whose freedom of movement is interrupted no less than that of the driver, has standing to object that a stop amounts to an unreasonable seizure of his person. See, e.g., 5 WAYNE R. LaFAVE, SEARCH AND SEIZURE 173–74 n. 231 (3rd ed.1996). As the Ohio Supreme Court stated in an opinion quoted by LaFave, "both passengers and the driver have standing regarding the legality of a stopping because when the vehicle is stopped, they are equally seized." *State v. Carter,* 69 Ohio St.3d 57, 630 N.E.2d 355, 360 (1994).

¶ 7 Finding that Defendant has standing, we turn to the validity of the stop.

## REASONABLE SUSPICION

■ ¶ 8 Whether the police have reasonable suspicion to make an investigative stop is a mixed question of law and fact that we review de novo. *See State v. Rogers,* 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996).

■ ¶ 9 The trial court, upholding the stop, found that the call to the police provided reasonable suspicion that Defendant had engaged in criminal activity, specifically, the reckless display of a firearm in violation of A.R.S. § 13–2904(A)(6) (1994). Defendant, however, citing *State v. Altieri,* 191 Ariz. 1, 951 P.2d 866 (1997), argues that information provided by the caller, who did not leave her name, was insufficiently detailed to provide the reasonable suspicion that must underlie an investigative stop.

¶ 10 Under *Altieri,* to support a stop, "an anonymous tip ... must show sufficiently detailed circumstances to indicate that the informant came by his information in a reliable way." *Id.* at 3, 951 P.2d at 868 (citing *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *State v. White,* 122 Ariz. 42, 43, 592 P.2d 1308, 1309 (1979)). Defendant points out that the caller's description of the car did not exceed "easily obtained facts and conditions existing at the time of the tip." *Id.* (quoting *Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). More is generally required to demonstrate reliability under *Altieri* than current information that could be obtained by anyone who saw a defendant passing by. *Id.*

¶ 11 The State distinguished *Altieri* in the trial court by contrasting transportation of unlawful drugs—the crime reported there—with reckless display of a firearm—the crime reported here. The imminent potential danger associated with a firearm, the State argued, provides more latitude for reasonable investigation by the police. The Supreme Court has rejected a comparable argument, however, in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), a decision issued since this matter came before this court.

¶ 12 In *J.L.*, an anonymous caller reported to the police that a young male at a bus stop was carrying a gun. The caller accurately described the young man's location and appearance but provided no further detail. This information was inadequate to support an investigative stop, the Court explained, because reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 1379. The Court explicitly rejected the argument that pre-search reliability testing standards should be eased in cases of tips concerning unlawful firearm possession. The Court explained, "Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search ... simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun." *Id.*

¶ 13 One might undertake to distinguish *J.L.* on the ground that Defendant Gomez, if the report were true, was not just carrying a weapon but committing a *crime* involving a weapon—the reckless display of a firearm in violation of A.R.S. § 13–2904(A)(6). This distinction is problematic, however, for in *J.L.*, the Supreme Court expressly rejected the assertion that the mere report of an illegal act involving a firearm would suffice to support a stop, absent suitable indicia of reliability. Responding to an argument that the suspect's youth made the stop and frisk valid because it is a crime in Florida for persons under 21 to carry concealed firearms, the Court stated,

This contention misses the mark. Even assuming that the arresting officers could be sure that J.L. was under 21, they would have had reasonable suspicion that J.L. was engaged in criminal activity only if they could be confident that he was carrying a gun in the first place. The mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a *Terry* stop without meeting the reliability requirement....

*Id.* at 1380 n. *.

¶ 14 The Court added a suggestive caveat, however:

The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk.

*Id.* at 1380. This caveat invites the question whether pointing a gun out the window and waving it in the air, the act reported here, poses a sufficient risk of danger to warrant a more relaxed reliability standard than pertains to unlawfully carrying a gun. Although we state the question, we need not answer it in this case;[1] it suffices to resolve this case by considering the question of informer anonymity in the context of a 911 call from a private phone.

¶ 15 The State argues on appeal that a sufficient margin of extra reliability arises from the fact that this was a "citizen complaint" rather than a mere "anonymous tip." Past Arizona cases have supported the general proposition that "reliability is enhanced" when "an ordinary citizen volunteers information which he has come upon in the ordinary course of his affairs, completely free of any possible ordinary gain." *State ex rel. Flournoy v. Wren*, 108 Ariz. 356, 364, 498 P.2d 444, 452 (1972); *see also State v. Lawson*, 144 Ariz. 547, 552, 698 P.2d 1266, 1271 (1985); *State v. Diffenderfer*, 120 Ariz. 404, 406, 586 P.2d 653, 655 (1978).

1. Although the State argued in the trial court that the danger of the reported conduct warrant-ed a relaxed standard of reliability, it did not reiterate this argument on appeal.

¶ 16 The State suggests no criteria that would distinguish a citizen complaint from an anonymous tip and place a 911 call in the first category rather than the second. Justice Kennedy's concurring opinion in *J.L.*, however, gives some help in this regard. In a "truly anonymous" phone call, Justice Kennedy observed, "the informant has not placed his credibility at risk and can lie with impunity." *J.L.*, 120 S.Ct. at 1380–81. Insofar as could be told from the record, the informant in *J.L.* was such a person; there was no recording of the call, and nothing was known about the caller. *Id.* at 1375–76. Similarly, there is no indication in *Altieri* that the informant was traceable; the court described the caller as an anonymous informer and gave no further detail. 191 Ariz. at 2, 951 P.2d at 867.

¶ 17 This was not such a call. Here, although the 911 operator did not ask the caller her name and the caller did not offer it, the phone call was recorded, and it is apparent from the recording that she was calling from her home.[2] One who dials 911 from a private phone is traceable, and does place credibility at risk in a way that an unidentifiable caller from a public phone does not. *Cf. J.L.* at 1380–81 (suggesting that a different reliability assessment might be warranted where the phone call can be traced).[3]

¶ 18 By making a traceable call from her home phone, this caller placed her credibility at risk in a manner comparable to the unidentified truck driver in *Lawson* who stopped at an agricultural inspection station and gave the inspector the license number of a vehicle whose occupants had offered to sell him sexual services and drugs. *See State v. Lawson*, 144 Ariz. at 551–52, 698 P.2d at 1270–71. Just as the *Lawson* truck driver was traceable and identifiable, presumably through his license number, so was the 911 caller in this case. And just as the truck driver's report qualified for the "enhanced

reliability" of information volunteered by a disinterested private citizen, *id.*, so does the information volunteered by the caller in this case.

CONCLUSION

¶ 19 The police had a reasonable basis for believing that their traceable citizen caller was reliable in her assertion of illegality and, accordingly, had an appropriate constitutional basis for an investigative stop. Because the trial court correctly denied Defendant's motion to suppress the evidence that resulted from that stop and because no other issues are presented, Defendant's conviction and sentence are affirmed.

CONCURRING: THOMAS C. KLEINSCHMIDT, Judge, and REBECCA WHITE BERCH, Judge.

---

2. The caller told the 911 operator that she and her daughter had been behind the Defendant and his companion in the drive-through lane of a Jack in the Box restaurant. Asked by the 911 operator how long ago she had seen the conduct that she reported, the caller responded, "I live like five minutes away, so I'd probably say like seven-eight minutes ago."

3. Indeed, the police made a follow-up contact with the caller and, upon learning that she wished to remain anonymous, treated Defendant's firearm display as a crime without a victim.