IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,            )
                                 )
                    Appellant,   )        2 CA-CR 2009-0023
                                 )        DEPARTMENT B
           v.                    )
                                 )        O P I N I O N
MARCOS ADRIAN CANALES,           )
                                 )
                    Appellee.    )
_____)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20081220

Honorable Michael J. Cruikshank, Judge

AFFIRMED

---

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                               Tucson
                                                    Attorneys for Appellant

The Law Offices of Stephen P. Barnard, P.C.
  By Stephen P. Barnard                                          Tucson
                                                     Attorneys for Appellee

---

V Á S Q U E Z, Judge.

¶1     The State of Arizona appeals the trial court's dismissal of charges against Marcos Canales after an evidentiary hearing on Canales's motion to dismiss based on a lack of probable cause to arrest him for driving under the influence of intoxicating liquor (DUI). Because we conclude the officer lacked reasonable suspicion to detain Canales, we affirm.

## Facts and Procedural Background

¶2     We view the evidence presented at the suppression hearing in the light most favorable to upholding the trial court's ruling. *State v. Rosengren*, 199 Ariz. 112, ¶ 2, 14 P.3d 303, 306 (App. 2000). Just after 11:00 p.m. on March 11, 2008, Pima County Sheriff's Deputy Audetat was dispatched to an apartment complex to investigate a suspicious vehicle in the parking lot. An unidentified person had called 911 and reported the vehicle. Audetat parked directly behind a car closely matching the description that had been provided and shined the patrol car's alley light toward the vehicle. As he approached on foot, he noticed Canales, who was sitting in the driver's seat, place a twenty-four-ounce beer can behind the passenger's seat. Audetat smelled an odor of alcohol coming from the vehicle and observed Canales had red, watery, bloodshot eyes. After back-up officers arrived, Audetat asked Canales to step out of the vehicle and perform two field sobriety tests. On the walk-and-turn test, Canales demonstrated three cues of impairment, and on the one-leg-stand test, he demonstrated one. A preliminary breath test revealed the presence of alcohol. Audetat arrested Canales for DUI, and another deputy performed a blood draw.

¶3 Based on the results of the blood test, Canales was charged with aggravated DUI while his license was suspended, revoked, or in violation of a restriction; aggravated DUI with an alcohol concentration of 0.08 or more while his license was suspended, revoked, or in violation of a restriction; aggravated DUI having two or more prior DUI convictions; and aggravated DUI with an alcohol concentration of 0.08 or more, having two or more prior DUI convictions. Before trial, Canales filed motions to dismiss for lack of reasonable suspicion and probable cause, and after a hearing, the trial court dismissed based on the lack of probable cause. The state has timely appealed.

**Discussion**

¶4 In the single issue raised on appeal, the state contends the trial court abused its discretion in granting the motion to dismiss because Audetat had probable cause to arrest Canales for DUI. Canales counters that the officer detained him without "any reasonable suspicion of criminal activity or a traffic violation,"[1] which he maintains violated his rights under the Fourth Amendment to the United States Constitution and article II, § 8 of the Arizona Constitution. Because we find the reasonable suspicion issue dispositive, we do not reach the issue of whether the officer had probable cause to arrest Canales. *See State v. Canez*, 202 Ariz. 133, ¶ 51, 42 P.3d 564, 582 (2002) (appellate court may affirm trial court if correct for any reason).

---

[1]The state opted not to file a reply brief and therefore has provided no response to this argument.

3

¶5 We review de novo whether there was reasonable suspicion to conduct an investigatory stop, *State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996), and defer to the trial court's factual findings that are supported by the record, *State v. Rosengren*, 199 Ariz. 112, ¶ 9, 14 P.3d 303, 307 (App. 2000), viewing them in the light most favorable to upholding the trial court's ruling, *State v. Gay*, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007).

¶6 Not all interactions between police officers and citizens implicate the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968); *State v. Wyman*, 197 Ariz. 10, ¶ 7, 3 P.3d 392, 395 (App. 2000). Only when the encounter is not voluntary and results in the restraint of the individual's liberty is the individual "seized" within the meaning of the Constitution. *Terry*, 392 U.S. at 20 n.16; *see also State v. Guillory*, 199 Ariz. 462, ¶ 11, 18 P.3d 1261, 1264 (App. 2001) (seizure requires use of physical force or submission to assertion of authority). "Whether an encounter is a detention . . . depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996).

¶7 Audetat testified at the suppression hearing that when he entered the parking lot, he parked his police car "in such a way that [Canales's] vehicle could not back out," so that it was "kind of immobilized . . . by [his] car." He then turned on his "alley light," which shone "in the direction" of the inside of Canales's car, and immediately approached the

4

driver's side window on foot. The trial court concluded that this amounted to a "stop, certainly, with the deputy parking behind the vehicle, even though the vehicle had not been moving."

¶8 Audetat's actions had made it physically impossible for Canales to terminate the encounter by leaving in his vehicle, and by shining a light toward the interior of the car and directly approaching the driver's side door, Audetat had conveyed to Canales that he was the subject of the inquiry. Under these circumstances a reasonable person would not have believed he was free "to disregard the police and go about his business." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). Canales was, therefore, detained. *See Rogers*, 186 Ariz. at 510-11, 924 P.2d at 1029-30 (defendant detained when officers approached on foot, displayed badge, and said, "we need to talk to you"); *see also United States v. Kerr*, 817 F.2d 1384, 1386-87 (9th Cir. 1987) (where police officer in marked vehicle blocked driveway as defendant attempted to back out, officer "provided [defendant] with no reasonable alternative except an encounter with the police"); *People v. Cascio*, 932 P.2d 1381, 1387 (Colo. 1997) (noting courts have found detention exists when police car "wholly blocks the defendant's ability to leave"); *Riley v. State*, 892 A.2d 370, 374 (Del. 2006) (detention occurred when police approached vehicle with badges and flashlights, after parking their vehicle in such a way as to prevent defendant from driving away); *State v. Jestice*, 861 A.2d 1060, 1062-63 (Vt. 2004) (defendant detained where defendant would have had to back up and maneuver around police car and officer to exit parking lot and officer shined headlights into vehicle);

5

*McChesney v. State*, 988 P.2d 1071, 1075 (Wyo. 1999) (noting use of police car to block defendant's car has been found to constitute seizure).

¶9        However, this conclusion does not end our analysis. We must also determine whether the detention was supported by reasonable suspicion, which is "a justifiable suspicion that the particular individual to be detained is involved in criminal activity." *State v. Graciano*, 134 Ariz. 35, 37, 653 P.2d 683, 685 (1982). Canales contends the anonymous citizen's telephone tip[2] was insufficient to justify the investigatory stop and Audetat personally had not observed any behavior that would have created reasonable suspicion of criminal activity. To support his argument Canales relies on *State v. Altieri*, 191 Ariz. 1, 951 P.2d 866 (1997), in which our supreme court held that an anonymous tip about criminal activity was insufficient to support reasonable suspicion.[3]

¶10       In *Altieri*, the Arizona Department of Public Safety received an anonymous tip claiming that a man was driving a car containing 150 pounds of marijuana. 191 Ariz. 1, ¶ 2, 951 P.2d at 867. The informant provided the name and age of the driver; the make, model, appearance, and license plate number of the vehicle; and the vehicle's approximate location. *Id.* Officers located and stopped the car based solely on this information. *Id.* ¶ 3. On appeal,

---

[2]Despite multiple opportunities below and on appeal, the state has never suggested that the caller was identifiable.

[3]Canales also cites two cases from other jurisdictions: *State v. Guernsey*, 84 P.3d 524 (Haw. App. 2001), and *Commonwealth v. Riggieri*, 759 N.E.2d 340 (Mass. App. 2001). However, both have been overruled by their respective supreme courts. *See State v. Guernsey*, 85 P.3d 177 (Haw. 2004); *Commonwealth v. Riggieri*, 782 N.E.2d 497 (Mass. 2003).

6

Altieri contended the tip was insufficient to provide reasonable suspicion to stop his vehicle. The court of appeals affirmed the trial court's denial of his motion to suppress, and the supreme court reversed. *Id.* ¶¶ 5-6.

¶11        The supreme court acknowledged that "an anonymous tip may, in some circumstances, be sufficient to support a stop, [if it] . . . show[s] sufficiently detailed circumstances to indicate that the informant came by his information in a reliable way." *Id.* ¶ 9. And it noted that when the tip "fails to provide sufficient underlying circumstances demonstrating the reliability of the information, the reliability may be supplied by independent observations of the police corroborating the information in the tip." *Id.*; *see State v. White*, 122 Ariz. 42, 43, 592 P.2d 1308, 1309 (App. 1979). However, to provide reasonable suspicion, the tip "must contain 'a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.'" *Altieri*, 191 Ariz. 1, ¶ 9, 951 P.2d at 868, *quoting Alabama v. White*, 492 U.S. 325, 332 (1990). Ultimately, our supreme court concluded the tip leading to Altieri's arrest did not provide reasonable suspicion for the initial stop, because it contained only "neutral, non-predictive information about the defendant and his activities." *Id.* ¶ 14.

¶12        In *State v. Gomez*, 198 Ariz. 61, 6 P.3d 765 (App. 2000), Division One of this court expanded upon the reasoning in *Altieri*. In *Gomez* an unidentified caller stated she had observed a passenger in a vehicle pointing a gun out of the window and waving it in the air.

7

198 Ariz. 61, ¶ 3, 6 P.3d at 766. The caller provided identifying information about the vehicle, and an officer located and stopped the vehicle. *Id.* After arresting the passenger for an outstanding warrant, officers searched him and found drugs and drug paraphernalia in one of his socks. *Id.* Relying on *Altieri*, Gomez asserted the police lacked reasonable suspicion to stop the vehicle in which he was a passenger. *Id.* ¶ 9.

¶13 The state argued *Altieri* was distinguishable because the tip had been provided by a "'citizen complaint' rather than a mere 'anonymous tip.'" *Id.* ¶ 15. The court noted in *Gomez* that prior cases had suggested "'reliability is enhanced' when 'an ordinary citizen volunteers information which he has come upon in the ordinary course of his affairs, completely free of any possible ordinary gain.'" *Id.*, *quoting State ex rel. Flournoy v. Wren*, 108 Ariz. 356, 364, 498 P.2d 444, 452 (1972). However, relying on a concurrence in a Supreme Court case, *Gomez* distinguished truly anonymous telephone calls in which "the informant has not placed his credibility at risk and can lie with impunity" from phone calls that are traceable, notwithstanding the caller's failure to identify himself or herself during the call. *Id.* ¶¶ 16-17, *quoting Florida v. J.L.*, 529 U.S. 266, 274-75 (2000) (Kennedy, J. concurring). The court in *Gomez* thus concluded the facts in that case were distinguishable from the facts in *Altieri*, in which it presumed the call had been truly anonymous, and concluded that because the caller in *Gomez* had called 911 from her home telephone, making the call traceable, she had "placed her credibility at risk," providing the necessary "'enhanced

8

reliability' of information volunteered by a disinterested private citizen." *Id.* ¶¶ 17-18, *quoting State v. Lawson*, 144 Ariz. 547, 551-52, 698 P.2d 1266, 1270-71 (1985).

¶14        *Altieri* and *Gomez* are both consistent with the Supreme Court's jurisprudence concerning anonymous tips. The Supreme Court has "recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is 'by hypothesis largely unknown, and unknowable.'" *White*, 496 U.S. at 329, *quoting Illinois v. Gates*, 462 U.S. 213, 237 (1983). Thus, in *White*, where the unidentified tipster had stated that a named woman would be leaving a certain building at a specified time in a specific car and would be proceeding to a specific motel, the Court held the officer had reasonable suspicion to stop her vehicle just before she reached the motel, having taken the most direct route there. 496 U.S. at 331.

¶15        In contrast, the Court found in *J.L.* that officers did not have reasonable suspicion to detain the defendant because the tip merely provided a physical description and an unsupported assertion that he was carrying a gun. 529 U.S. at 271. "The anonymous call . . . provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *Id.* Thus, the tip was insufficient to provide reasonable suspicion because "[a]ll the police had to go on . . . was the bare report of an

unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.*

¶16 The common thread in these cases is that an anonymous tip is not a sufficient and independent basis for reasonable suspicion unless it is "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272. The tip here does not satisfy this requirement. According to Deputy Audetat, the caller reported suspicious activity in the parking lot of an apartment complex and gave a description of the suspicious vehicle and its license plate. The caller apparently was concerned that the occupant of the vehicle was "possibly preparing" to burglarize other vehicles in the area. And, although Audetat was able to locate a vehicle that fit the general description and had a license plate number close to that given, standing alone, the tip provided no reliable information to support a reasonable suspicion that the vehicle's occupant was engaging in criminal activity. *See Altieri*, 191 Ariz. 1, ¶ 14, 951 P.2d at 869 ("neutral, non-predictive information about the defendant and his activities" insufficient basis for reasonable suspicion); *see also J.L.*, 529 U.S. at 271; *White*, 496 U.S. at 329.

¶17 We are mindful that as he approached Canales's vehicle, Audetat observed him place a beer can behind the passenger seat. Although this observation could have provided the basis for reasonable suspicion to initiate a DUI investigation, it did not occur until after Audetat had blocked Canales's vehicle and had shined his alley light to see inside the car. Thus, the detention had already occurred before Audetat observed conduct that arguably was

10

sufficient to support the reasonable suspicion necessary to detain Canales. Therefore, the trial court did not err in dismissing the indictment, albeit on another ground. *See Canez*, 202 Ariz. 133, ¶ 51, 42 P.3d at 582 (appellate court may affirm trial court if correct for any reason).

## Disposition

¶18 For the reasons stated above, we affirm the trial court's dismissal of the indictment.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge



_____
ANN A. SCOTT TIMMER, Judge*



*The Honorable Ann A. Scott Timmer, Chief Judge of Division One of the Arizona Court of Appeals, is authorized to participate in this appeal pursuant to A.R.S. § 12-120(F) (2003).