NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PATRICIA FALKENBURRY, *Appellant*.

No. 1 CA-CR 13-0805
FILED 12-04-2014

Appeal from the Superior Court in Yavapai County
No. P1300CR200901255
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Law Office of Nicole Farnum, Phoenix
By Nicole Farnum
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Randall M. Howe joined.

**P O R T L E Y**, Judge:

**¶1**        Defendant Patricia M. Falkenburry appeals her convictions for transportation of methamphetamine for sale and related charges, and the resulting sentences.  She argues that the trial court erred by denying her motion to suppress evidence.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        After a traffic stop on the I-17 freeway in December 2009, Defendant was indicted for transportation of dangerous drugs for sale (methamphetamine), a class 2 felony; possession of a dangerous drug (methamphetamine), a class 4 felony; possession of  drug paraphernalia, a class 6 felony; and misconduct involving weapons (a .22 caliber pistol), a class 4 felony.

**¶3**        Before trial, Defendant and her co-defendant, Jessica Thorpe, moved to suppress evidence seized from the car Defendant had been driving alleging it was obtained in violation of the Fourth Amendment of the United States Constitution and Article 2, Section 8 of the Arizona Constitution.[1]  Specifically, Defendant argued that because the civil traffic stop that resulted in a warning was completed and neither she nor Thorpe consented to a "dog sniff,"[2] the seized evidence was the "fruit[] of the poisonous tree" since there were no other factors to support the search.

**¶4**        Following an evidentiary hearing, the trial court denied the motion to suppress.  The case proceeded to trial, and the jury found Defendant guilty as charged.  At sentencing, the parties stipulated to

---

[1] The State agreed to dismiss the charges against Thorpe in exchange for her testimony against Defendant.

[2] At the evidentiary hearing, Defendant disputed the reliability of the dog sniff.  However, the trial court found that the dog sniff was reliable and it is not an issue in this appeal.

dismiss the possession of methamphetamine count for the drugs found in her purse and Defendant was sentenced to concurrent prison terms that did not exceed 7 years.

¶5         Defendant timely appealed.  We have jurisdiction under Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes sections 12–120.21(A)(1), 13–4031, and –4033(A).[3]

## DISCUSSION

### I.     Standard of Review

¶6         We review the denial of a motion to suppress for an abuse of discretion, but give deference to the trial court's factual determinations, including its evaluation of the credibility of witness testimony.  *State v. Box*, 205 Ariz. 492, 495, ¶ 7, 73 P.3d 623, 626 (App. 2003).  But, we review de novo the application of the law to those facts, including whether under the totality of the circumstances there was reasonable suspicion to support an investigative detention, and whether the duration of that detention was reasonable.  *See State v. Teagle*, 217 Ariz. 17, 22, ¶ 19, 170 P.3d 266, 271 (App. 2007).  We restrict our review to the evidence presented at the suppression hearing and consider it in the light most favorable to upholding the ruling. *State v. Blackmore,* 186 Ariz. 630, 631, 925 P.2d 1347, 1349 (1996); *State v. Walker,* 215 Ariz. 91, 94, ¶ 16, 158 P.3d 220, 223 (App. 2007).

### II.    Evidence Adduced at the Suppression Hearing

¶7         Defendant challenges the search of the car she was driving by the drug-sniffing dog and contends it was a second and independent stop unrelated to the traffic stop.[4]  She argues, as a result, that the police had no legal basis for the search and the evidence should have been suppressed pursuant to the Fourth Amendment.  We disagree.

¶8         Ron Guert was busted for a drug offense and agreed to work it off — act as an informant in order to try to avoid or minimize prosecution. He told the Yavapai Sheriff's Department Special Crimes Unit that he was to meet a woman and she would be transporting methamphetamine.  The information was relayed to other deputies and Sergeant Phillip Rousselle was asked to stop a 2006 white Hyundai that the woman would be driving. Following the informant's information, Sergeant Rousselle found the

---

[3] We cite to the current version of the statute unless otherwise noted.
[4] Defendant does not challenge the validity of the traffic stop.  *See* Ariz. R. Crim. P. 31.13(c)(1)(vi).

suspected car at a barbeque restaurant outside of Black Canyon City and followed it as the car drove north on the I-17 freeway. As the car was approaching the Sunset Point exit, Rousselle testified it "made an abrupt right turn onto the exit . . . and drove over the gore point." He activated his lights and stopped the car for driving across the gore point and failing to use a turn signal. Defendant was driving the car.

¶9          Deputy Harry Schrum was nearby at the time of the stop. Because he had also been informed that the car would likely have drugs in it, he drove to the scene with his drug-detection dog. Then, "[a]s [Sergeant Rousselle] was talking to [Defendant about] the warning[,] K-9 Deputy Schrum asked to walk the dog around the car." Sergeant Rousselle responded that he was "finished" with Defendant and told her she was "free to leave."

¶10          Deputy Schrum told Thorpe, the car's owner who was in the passenger seat, to get out of the car, spoke "briefly" with both Thorpe and Defendant, and then "ran the dog around the car." After the dog alerted to the passenger-side window area, Deputy Schrum searched the car and discovered a substantial quantity of methamphetamine, drug paraphernalia, and a .22 caliber semiautomatic pistol.

### III.          Constitutionality of Investigatory Detention

¶11          The Fourth Amendment prevents unreasonable searches and seizures. *Whren v. United States*, 517 U.S. 806, 809 (1996). When the police stop a car, it is a seizure for the purposes of the Fourth Amendment. *State v. Saez*, 173 Ariz. 624, 627, 845 P.2d 1119 (App. 1992). However, given the mobility of cars, the U.S. Supreme Court has stated that a car can be stopped when the police reasonably suspect a person has committed a traffic violation. *See Arizona v. Johnson*, 555 U.S. 323, 326 (2009) (permitting a traffic stop "when the police officer reasonably suspects" a traffic violation). A civil traffic stop is not tainted or undermined even though the law enforcement has information that the car was transporting drugs or is otherwise involved in criminal activity. *State v. Swanson*, 172 Ariz. 579, 582, 838 P.2d 1340, 1343 (App. 1992) ("Regardless of the officer's underlying motives, a stop is not invalid if there exists a valid, objective reason to make the stop.").

¶12          Here, the trial court determined that Defendant was properly stopped for two traffic violations. After giving her a verbal warning, the police temporarily detained Defendant to confirm or dispel the suspicion that she was transporting illegal drugs. In order to determine whether the

investigative detention was proper, we look at the totality of the circumstance to determine whether there was reasonable suspicion that Defendant was engaged in criminal activity. *Teagle*, 217 Ariz. at 23, ¶ 20, 170 P.3d at 272.

¶13 The totality of the circumstances justifies Defendant's investigative detention. The Yavapai Sheriff's Department Special Crimes unit received information from an arrested person, who was trying to avoid prosecution, that a woman would be driving a car containing methamphetamine and passed it along. Information provided by an informant can be sufficiently reliable to create reasonable suspicion. *See Alabama v. White*, 496 U.S. 325, 330 (1990) (stating that reasonable suspicion is based on the totality of the circumstances).

¶14 Moreover, there are three reasons why the informant's information was reliable. First, the Yavapai Sheriff's Office knew the informant. *See State v. Gomez*, 198 Ariz. 61, 64, ¶ 17, 6 P.3d 765, 768 (App. 2000) (where information from citizen's traceable 911 call provided police with reasonable suspicion to conduct investigatory stop); *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (noting that when a tip is from a known informant, the informant's "reputation can be assessed and [she] can be held responsible if her allegations turn out to be fabricated"). Second, although Defendant testified that the informant asked her to deliver the backpack containing the methamphetamine to him under the ruse he needed his probation papers, the informant had a self-interest in providing accurate information even if it indirectly implicated himself in further criminal activity. *See United States v. Harris*, 403 U.S. 573, 584 (1971) (stating that information that tends to implicate an informant in criminal activity is likely to be reliable, even if "the informant may be paid or promised a 'break'" for the information). Finally, the information provided — that a four-door white car with dark tinted windows driven by a female would have drugs and the driver would leave from the Bad-Ass Barbeque and drive to the Sunset Point exit — was corroborated because Sergeant Rousselle followed the car before the traffic stop. *See State v. Canales*, 222 Ariz. 493, 496, ¶ 11, 217 P.3d 836, 839 (App. 2009); *see also State v. White*, 122 Ariz. 42, 43, 592 P.2d 1308, 1310 (App. 1979) ("If the tip itself fails to reflect sufficient underlying circumstances indicating reliability of the information, such reliability may in an appropriate case be supplied by independent observations of the police corroborating the information in the tip."). Therefore, the information provided by the informant, and Rouselle's independent corroboration, provided reasonable suspicion that Defendant was engaged in criminal activity.

¶15 Once the police have reasonable suspicion, they may detain a suspect during an investigatory stop for as long as reasonably necessary to "diligently pursue[] a means of investigation . . . likely to confirm or dispel their suspicions quickly." *Teagle*, 217 Ariz. at 26, ¶ 32, 170 P.3d at 275 (citation omitted). Although Defendant cites to *State v. Sweeney*, 224 Ariz. 107, 227 P.3d 868 (App. 2010), to support her argument that the investigatory detention was an unlawful second seizure, *Sweeney* is not applicable here. In *Sweeney*, the appellant refused to allow the officer to search the car and the officer "grabbed Appellant's arm, told him he was being detained and ordered him to stand in front of the patrol car." *Id.* at 112, ¶ 20, 227 P.3d at 873 (internal quotation marks omitted). As a result, we stated that "the continued detention of Appellant after he declined to allow the search was an additional seizure under the Fourth Amendment." *Id.*

¶16 Unlike *Sweeney*, the officers here had reasonable suspicion that Defendant was transporting drugs in the car and neither acted in an overbearing manner. *See Box*, 205 Ariz. at 499, ¶ 24, 73 P.3d at 630. Deputy Schrum arrived before Sergeant Rousselle finished giving Defendant a verbal warning, and the dog began sniffing the exterior of the vehicle very soon after Rousselle completed the verbal warning. Because the time between the warning and dog sniff was nominal, the post-traffic stop was *de minimus* "and not unreasonable under the Fourth Amendment." *Id.* Consequently, based on the evidence presented at the suppression hearing, there was no constitutional violation and the trial court did not abuse its discretion by denying Defendant's motion to suppress.

## CONCLUSION

¶17 For the above reasons, we affirm Defendant's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh