NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

TOMMIE PAYAN, *Appellant.*

No. 1 CA-CR 16-0683
FILED 9-19-2017

---

Appeal from the Superior Court in Maricopa County
No.  CR2015-100139-001
The Honorable Justin Beresky, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

---

### MEMORANDUM DECISION

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

¶1        Tommie Payan ("Payan") appeals his convictions and sentences for resisting arrest and possession of marijuana. For the following reasons, we affirm Payan's convictions, and also affirm his sentences as modified.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        At approximately 3:00 a.m. on January 2, 2015, a patrol officer responded to a dispatch call regarding a suspicious white Dodge sedan that had reportedly followed an unidentified person home and was parked across the street from the individual's residence. When the officer arrived at the scene, he located a vehicle matching the reported description and parked his patrol car directly behind it, illuminating the Dodge with his patrol car's overhead and side-mounted spotlights.

¶3        As the officer got out of the patrol car and approached the Dodge, he saw two occupants, a female driver and a male passenger who was later identified as Payan. While speaking to the driver through the open driver's-side window, the officer observed Payan's darting eyes and "furtive movements" toward his pockets, waist, and seat. The officer ordered Payan to stop moving, but Payan complied only momentarily. Based on Payan's continued movements and overall nervous demeanor, the officer feared for his safety and asked both occupants to get out of the car and sit on the curb.

¶4        At that point, the officer's supervising sergeant arrived at the scene. As he walked past the Dodge, the sergeant smelled "a faint odor of

---

[1]        In reviewing the denial of Payan's motion to suppress, we consider only "evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling." *State v. Hausner*, 230 Ariz. 60, 70, ¶ 23 (2012).

marijuana emanating" from inside the vehicle.[2] While the sergeant remained at the curb with the driver and Payan, the officer checked the occupants' names and the vehicle's license plate on his patrol car's computer. After learning neither occupant had an outstanding warrant and discovering that the Dodge was parked in front of Payan's residence, the officer returned to the vehicle and shined his flashlight through the car's windows. The officer saw on the floorboard behind the driver's seat a plastic bag imprinted with "small cloverleafs" that contained "an oily, flaky substance." Believing the plastic bag held marijuana residue, the officer asked the driver for consent to search the vehicle, which she provided. During the subsequent search, the officer found a purse containing a small amount of marijuana and a marijuana grinder on the front passenger floorboard where Payan had been seated.

¶5 Concluding he had probable cause to arrest both occupants, the officer ordered Payan to stand and searched him, finding marijuana in Payan's front left short's pocket. At that point, the officer attempted to place Payan in handcuffs, but Payan tried to run away. After several attempts to wrestle Payan to the ground, the officer subdued Payan with pepper spray.

¶6 The State charged Payan with one count of felony resisting arrest (Count 1) and one count of possession of marijuana (Count 2). The State also alleged aggravating circumstances, that Payan had prior felony convictions, and was ineligible for mandatory probation.

¶7 After a five-day trial, the jury found Payan not guilty of felony resisting arrest, guilty of the lesser-included offense of misdemeanor resisting arrest (passive resistance), and guilty of possession of marijuana.[3]

---

[2] At the motion to suppress hearing, the patrol officer did not recall whether the sergeant had conveyed this observation to him.

[3] As the State noted, the sentencing minute entry incorrectly designates the conviction for resisting arrest as a Class 6 felony. Because the jury found Payan not guilty of felony resisting arrest, and convicted him of the lesser-included offense of resisting arrest through passive resistance, a misdemeanor, we modify the sentence to a Class 1 misdemeanor designation. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-2508(B); Ariz. R. Crim. P. 31.17(d) (authorizing court to modify a judgment); A.R.S. § 13-4037(A) (authorizing an appellate court to "correct" an illegal sentence).

After a trial on the prior convictions, the court found Payan had three historical prior felony convictions and sentenced him to time served for Count 1 and a three-year term of imprisonment on Count 2. Payan timely appealed and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A) (2017).[4]

## DISCUSSION

### I. Denial of Motion to Suppress

**¶8** Payan argues the superior court erred by failing to suppress the evidence seized from the January 2, 2015 predawn search. He contends the patrol officer lacked (1) reasonable suspicion to stop the vehicle, (2) reasonable suspicion to prolong his detention, and (3) probable cause to arrest him.

**¶9** Before trial, Payan moved to suppress all evidence seized from the search. After a two-day evidentiary hearing, the trial court entered a detailed ruling denying the motion, finding in relevant part: (1) no reasonable suspicion was required for the officer to approach the Dodge; (2) even if reasonable suspicion was necessary, an individual's report that the Dodge followed him home and then remained in the vicinity, given the time of night, provided a reasonable basis "for the officer to contact the vehicle to determine" whether criminal activity was afoot; (3) Payan's furtive movements, darting eyes, and overall nervous demeanor provided sufficient indicia of criminal activity to warrant an investigative stop; (4) the officer's "brief flashlight search" of the vehicle was lawful to determine whether any indicia of criminal activity, "such as weapons or burglary tools," was present; and (5) once the officer "observed what he believed to be marijuana residue, he had probable cause to arrest [the] occupants of the vehicle" because both the driver and Payan were within reach of the contraband.

**¶10** We review the denial of a motion to suppress evidence for an abuse of discretion. *Brown v. McClennen*, 239 Ariz. 521, 524, ¶ 10 (2016). We will uphold the trial court's ruling if it is legally correct for any reason. *State v. Huez*, 240 Ariz. 406, 412, ¶ 19 (App. 2016).

---

[4] Absent material revision after the date of an alleged offense, we cite a statute's current version.

¶11            The United States Constitution and Arizona Constitution, with limited exceptions not relevant here, protect individuals against unreasonable searches and seizures.  U.S. Const. amend. IV; Ariz. Const. art. 2, § 8.  "[A]ny evidence collected in violation" of these provisions "is generally inadmissible in a subsequent trial."  *State v. Valenzuela*, 239 Ariz. 299, 302, ¶ 10 (2016).  "Not all interactions between police officers and citizens implicate" these protections, however.  *State v. Canales*, 222 Ariz. 493, 494, ¶ 6 (App. 2009).  Only involuntary encounters that restrain an individual's liberty are constitutionally proscribed.  *Id*. at 495, ¶ 6. "Whether an encounter is a detention . . . depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter."  *Id*.

¶12            At the suppression hearing, defense counsel asked the patrol officer whether the Dodge's occupants could have driven away after the officer positioned his patrol car directly behind their vehicle and turned on his overhead and side-mounted spotlights.  Given the relative location of the patrol and suspect vehicles on the open surface street, the officer stated the occupants were not physically prevented from leaving the scene.  When defense counsel then asked whether the officer would have pursued the occupants had they done so, the officer responded that he most likely would have followed the vehicle, but would not have effectuated a stop, absent some additional basis.

¶13            Relying primarily on *Canales*, Payan argues he was detained when the patrol officer pulled behind the Dodge and shined the patrol car's spotlights toward the vehicle.  In *Canales*, an unidentified person called 9-1-1 to report a suspicious vehicle at an apartment complex.  222 Ariz. at 494, ¶ 2.  The responding patrol officer "parked directly behind a car closely matching the description that had been provided and shined the patrol car's alley light toward the vehicle."  *Id*.  Reasoning the officer's use of the alley light "conveyed to Canales that he was the subject" of an inquiry, and finding the location of the police car prevented Canales from backing out of the parking lot, we held that Canales was not "free to disregard the police" and was therefore detained.  *Id*. at 495, ¶ 8.

¶14            Unlike the circumstances in *Canales*, here, Payan was not physically prevented from leaving the scene.  Although the officer's use of multiple spotlights to illuminate the Dodge conveyed that Payan and the driver were the focus of an inquiry, "the relatively unintrusive investigatory step of shining a spotlight" on the car, alone, neither constituted "an unlawful search of the vehicle nor a seizure of [its

occupants]." *State v. Stuart*, 168 Ariz. 83, 86 (App. 1990). It is uncontroverted that the occupants parked the Dodge voluntarily, not in response to any police action, and the officer did not activate his emergency lights or otherwise make a show of authority. *See Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968) (explaining a seizure occurs "[o]nly when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen"). Therefore, on these facts, Payan was not seized by the officer's spotlight illumination of the Dodge or his approach of the already-parked car. *See State v. Robles*, 171 Ariz. 441, 443 (App. 1992) (holding police officers did not seize the defendant when they approached him after he voluntarily parked his car).

¶15        After the officer approached the vehicle and briefly spoke to the occupants through the driver's-side window, however, he ordered both Payan and the driver to get out of the vehicle and sit on the curb. Without question, the officer detained Payan at this point. Indeed, the officer testified that Payan was not free to leave once the officer ordered him to get out of the vehicle.

¶16        A law enforcement official may "briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot[.]" *State v. Evans*, 237 Ariz. 231, 234, ¶ 7 (2015) (internal quotations omitted). "In determining whether reasonable suspicion exists, officers and courts reviewing their actions take into account the totality of the circumstances — the whole picture of what occurred at the scene." *Id.* at 234, ¶ 8 (internal quotations omitted).

¶17        Viewing the totality of the circumstances in this case, the officer had reasonable suspicion that Payan may be involved in criminal activity, which justified a brief investigatory detention. First, an unidentified individual alerted the police that the occupants of the vehicle had followed him home in the middle of the night and remained outside his residence. Second, Payan's conduct during the officer's brief contact with the occupants through the driver's-side window reasonably caused the officer to fear for his own safety. Rather than looking directly at the officer, Payan's eyes "dart[ed]" about as he repeatedly reached into his clothing and around his seat. Payan's nervous demeanor and refusal to follow the officer's order to keep his hands still and visible was sufficiently suspect to justify the officer's belief that criminal activity may be afoot.

¶18        Nonetheless, Payan argues his continued detention, after the officer had checked the occupants' names and vehicle information on the patrol car computer, was unlawful.  That is, he contends any reasonable suspicion dissipated once the officer learned neither occupant had an outstanding warrant, the Dodge had not been reported stolen, and the vehicle was parked in front of Payan's residence.

¶19        "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate" its purpose.  *Florida v. Royer*, 460 U.S. 491, 500 (1983).  When an officer lacks probable cause, "duration is an essential element in determining whether the initially lawful intrusion takes on the characteristics of an unlawful detention."  *State v. Sweeney*, 224 Ariz. 107, 112, ¶ 17 (App. 2010).  "To determine the reasonableness of the length of a detention, we must consider the degree of intrusion on an individual's privacy and weigh that against the purpose of the [detention] and the diligence with which the officer pursued that purpose."  *Id*. at ¶ 18.

¶20        In this case, the officer approached the parked vehicle to investigate a report that its occupants had followed an unidentified person home in the middle of the night.  The officer's subsequent discovery that Payan lived at the residence where the Dodge was parked ordinarily would have dispelled any suspicion.  However, the officer's observation of Payan's demeanor and conduct during their brief contact independently aroused suspicion that the occupants may be dangerous and involved in illegal activity.  Given Payan's suspicious behavior, the officer's flashlight search of the vehicle was reasonable to ensure no indicia of criminal activity was present.  Moreover, the officer's brief walk around the exterior of the vehicle did not "measurably extend the duration" of the investigation, and therefore did not convert the lawful detention into an unlawful, prolonged detention.  *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

¶21        Finally, Payan asserts the officer lacked probable cause to arrest him, and therefore the search attendant to his arrest was unlawful.  Specifically, Payan argues the location of the marijuana and drug paraphernalia, behind the driver's seat and inside the driver's purse, did not provide probable cause that he was in possession of drugs or drug paraphernalia.

**¶22** "To make a warrantless arrest, a police officer must have probable cause to believe both that a crime has been committed and that the person to be arrested committed the crime." *State v. Keener*, 206 Ariz. 29, 32, ¶ 15 (App. 2003). "Probable cause derives from reasonably trustworthy information and circumstances [that] would lead a person of reasonable caution to believe that a suspect has committed an offense." *Id.* (internal quotations omitted). "[W]hether probable cause exists depends on all of the facts and circumstances known at the time of the arrest," including "the collective knowledge of all of the officers involved in the case." *Id.*; *see also State v. Lawson*, 144 Ariz. 547, 553 (1985) (explaining it is "not essential that the arresting officer personally be in possession of all the facts as long as probable cause exists from the collective knowledge of all the law enforcement agents involved").

**¶23** Applying these principles here, the officers had probable cause to arrest and search Payan. By the time the patrol officer searched Payan, the officer had discovered a small amount of marijuana and drug paraphernalia on the floorboard of the vehicle where Payan had been seated. Pursuant to statute, it is unlawful to knowingly possess marijuana, either through actual physical possession or the exercise of dominion and control. A.R.S. § 13-3405(A)(1); A.R.S. § 13-105(34). Payan's darting eyes, nervous demeanor, repeated furtive movements around the seat of the car, and refusal to comply with the officer's order to remain still reasonably led the officer to believe that Payan knew of the contraband's presence and had access to it. *See State v. Moses*, 24 Ariz. App. 305, 307 (1975) (explaining the critical elements of constructive possession are knowledge of a drug's presence and access to it); *see also State v. Little*, 121 Ariz. 377, 379 (1979) ("In the context of drug investigation, a movement of the hand to the pocket, particularly where . . . the one being investigated has been specifically instructed to keep his hands away from his pockets, can be a meaningful circumstance in determining the existence of probable cause."). Therefore, on this record, the circumstances were sufficient to establish probable cause, and the superior court did not abuse its discretion by denying Payan's motion to suppress.

## II.    *Batson*[5] **Challenge**

**¶24** Payan challenges the State's peremptory strike of a racial minority juror, and argues the superior court improperly denied his *Batson* challenge.

---

[5]      *Batson v. Kentucky*, 476 U.S. 79 (1986).

¶25         "[U]sing a peremptory strike to exclude a potential juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment."  *State v. Newell*, 212 Ariz. 389, 400, ¶ 51 (2006) (citing *Batson v. Kentucky*, 476 U.S. 79, 89 (1986)).  We will uphold the denial of a *Batson* challenge absent clear error.  *Newell*, 212 Ariz. at 400, ¶ 52. Because the trial court is in the best position to assess a prosecutor's credibility, which is a primary factor in evaluating the State's motive for exercising a peremptory strike, we extend "great deference" to the trial court's ruling.  *State v. Roque*, 213 Ariz. 193, 203, ¶ 12 (2006) (internal quotations omitted); *Newell*, 212 Ariz. at 401, ¶ 54.

¶26         A *Batson* challenge is comprised of three steps.  *Newell*, 212 Ariz. at 401, ¶ 53.  First, the defendant must make a *prima facie* showing of racial discrimination.  *Id*.  If such a showing is made, the prosecutor must then present a race-neutral reason for the strike.  *Id*.  Finally, if the prosecutor provides a facially neutral basis, "the trial court must determine whether the defendant has established purposeful discrimination."  *Id*. (internal quotations omitted).  "To pass step two, the explanation need not be persuasive, or even plausible," but "implausible or fantastic justifications" may (and probably will) be found to be pretextual in determining whether the defendant has proven purposeful discrimination. *Id*. at 401, ¶ 54.

¶27         During jury selection, the superior court asked the prospective jurors whether they had any legal education or training.  Juror 5 answered that her "father used to be a police officer in Puerto Rico, like almost ten years ago.  And he's in counseling for drug abuse."  The court repeated, "[i]n counseling for drug abuse," and the juror responded, "[y]eah."  Later, the court asked the prospective jurors to provide biographical information about themselves and juror 5 stated, "I'm a cashier in Food City almost ten months.  Single with child, seven years, never been a juror."

¶28         After the prosecutor exercised her peremptory strikes, defense counsel challenged the State's strike of juror 5.  The court invited the prosecutor to respond, implicitly finding Payan had made a *prima facie* showing of discrimination, satisfying the first step.  The prosecutor then explained that she discussed her notes regarding juror 5 with co-counsel and "realized that [they] had difficulty understanding her," with the prosecutor believing that juror 5's father is a "counselor for drug abuse" and co-counsel documenting that the juror's "father was a drug addict." Because at least one of the attorneys necessarily misunderstood juror 5, the prosecutor became concerned "that there may be an issue with language"

and the prospective juror's ability to communicate "with the other jurors[.]" After defense counsel noted that the State failed to inquire whether juror 5 had difficulty understanding or otherwise felt uncomfortable communicating with the other jurors, the court found the proffered race-neutral reason for the strike was plausible and supported by the record. Indeed, the court acknowledged "there was some difficulty in her speech" and explained "[i]t was somewhat difficult to understand her[.]" At that point, defense counsel offered nothing further to support her *Batson* challenge.

**¶29**　　　　Citing *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005), Payan argues the prosecutor's failure to voir dire juror 5 regarding possible communication difficulty is evidence "that the explanation is a sham and a pretext for discrimination." *Miller-El*, however, is inapposite. In that case, the prosecutor's proffered race-neutral reason clearly "mischaracterized" the prospective juror's testimony, and the prosecutor expressed no similar concern for similarly situated "white panel members[.]" *Id*. at 244-48. In this case, Payan does not identify, and the record does not reflect, any similarly situated jurors, and the prosecutor explained she did not realize the language issue until she compared notes with co-counsel, following the conclusion of voir dire, and discovered their respective understandings of juror 5's statements were irreconcilable.

**¶30**　　　　Because Payan failed to present any evidence that the peremptory strike was the result of purposeful racial discrimination, and given the prosecutor's race-neutral reason for the peremptory strike, the superior court did not clearly err by rejecting Payan's *Batson* challenge. *See State v. Bustamante*, 229 Ariz. 256, 261, ¶ 16 (App. 2012) (concluding a prosecutor's strike of a juror because of "language issues" was a plausible, race-neutral reason for striking a juror).

## III.　Designation of Patrol Officer as a Victim

**¶31**　　　　Payan contends the superior court improperly found the patrol officer qualified as a victim entitled to the protections afforded by Arizona's Victims' Bill of Rights.

**¶32**　　　　Before trial, Payan moved to determine victim status, seeking a pretrial interview with the patrol officer. After a hearing on the motion, the court found the patrol officer qualified as a victim and had the right to refuse a pretrial interview.

¶33        We interpret the Victims' Bill of Rights *de novo*. *State ex rel. Montgomery*, 238 Ariz. 560, 564, ¶ 12 (App. 2015). Pursuant to the Victims' Bill of Rights, a "victim" is a person "against whom the criminal offense has been committed[.]" Ariz. Const., art. 2, § 2.1(C). A qualifying victim has the right to "refuse an interview, deposition, or other discovery request by the defendant[.]" Ariz. Const., art. 2, § 2.1(A)(5).

¶34        As charged in this case and set forth by statute, "[a] person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by [u]sing or threatening to use physical force against the peace officer or another." A.R.S. § 13-2508(A)(1). In *State v. Sorkhabi*, 202 Ariz. 450 (App. 2002), we squarely addressed the question before us, namely, whether resisting arrest is a victimless crime. We held the plain language of A.R.S. § 13-2508 "demonstrates that resisting arrest is a crime committed against a person." *Id*. at 452, ¶ 9. In other words, a "defendant must demonstrate criminal conduct toward an individual, peace officer or another, to commit the crime of resisting arrest." *Id*.

¶35        Relying on *State v. Jurden*, 239 Ariz. 526 (2016), Payan argues a police officer cannot qualify as a victim of a resisting arrest charge because the offense is "event-directed," not "victim-directed." In *Jurden*, our supreme court analyzed whether a defendant could be convicted of "multiple counts of resisting arrest resulting from a single, continuous act of resistance involving multiple officers." *Id*. at 528, ¶ 8. Noting there was "no question" that the resisting arrest statute was enacted "to protect peace officers," the supreme court explained that "the statute also seeks to protect the authority of the state." *Id*. at 531, ¶ 19. Concluding an "event-directed unit of prosecution satisfie[d] both purposes of the statute," the supreme court held the "Double Jeopardy Clause does not allow multiple convictions and punishments . . . for a single, continuous act of resisting arrest." *Id*. at 531-32, ¶¶ 21, 26.

¶36        Contrary to Payan's argument, *Jurden* does not call into question *Sorkhabi's* continuing validity. Rather, in *Jurden*, our supreme court distinguished *Sorkhabi*, explaining it was "not helpful in determining the unit of prosecution" because the case did not implicate double jeopardy. *Jurden*, 239 Ariz. at 530, ¶ 14. Therefore, applying *Sorkhabi* here, the superior court did not err by designating the patrol officer as a victim entitled to refuse pretrial interviews.

## CONCLUSION

¶37       We affirm Payan's convictions and his sentences as modified.

